**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID GECHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | No.: 2023 CV 01742 |
| | ) | |
| **REYNALDO GUEVARA, et al.** | ) | Judge Matthew F. Kennelly |
| | ) | |
| | ) | |
| **Defendants.** | | |

**DEFENDANTS' MOTION TO RECUSE**

NOW COME Defendants, Reynaldo Guevara, Alan Pergande, Michael Muzupappa, Robert Rutherford, Edwin Dickinson, and the City of Chicago ("Defendants")[1], by and through their respective attorneys, and pursuant to 28 U.S.C. § 455(a) and, in the alternative, § 455(b)(1), respectfully move this Your Honor to recuse himself in this case. In support thereof, Defendants state as follows:

**INTRODUCTION**

Your Honor previously recused himself *sua sponte* pursuant to 28 U.S.C. § 455(a) in another civil case (*Serrano v. Guevara, et al.*, 17 CV 02869) filed against some of the named Defendants in this case, specifically Defendant Guevara and Defendant Halvorsen and Defendant City of Chicago, as a result of Your Honor's past extrajudicial involvement as a private attorney representing an individual named Roberto Almodovar who made similar allegations against Defendant Guevara and Defendant Halvorsen. *See* Ex. 7 (06/29/17 transcript of proceeding in *Serrano v. Guevara et al.*, No. 17 CV 2869). For similar reasons as articulated by Your Honor in the *Serrano* case and for the other reasons set forth

---

[1] Plaintiff has also named Geri Lynn Yanow, as special representative of the Estate of Ernest Halvorsen, and Francis Cappitelli as defendants in this matter. However, Francis Cappitelli is deceased, and therefore he not a proper party. *Ezell v. City of Chicago*, 2020 WL 535130, *3 (N.D. Ill. Jan. 17, 2020) (citations omitted). In addition, there is no estate for deceased, Ernest Halvorsen. And Plaintiff has not moved to appoint a special representative for either Cappitelli or Halvorsen. Despite being an improper party, for ease of reference in this motion, Ernest Halvorsen is referred to herein as "Defendant Halvorsen."

1

below, Defendants request Your Honor recuse himself from this case and refer this matter back for random reassignment to another district court judge in this District.

## RELEVANT BACKGROUND

    A.    **The *Almodovar* Case.**

Roberto Almodovar and co-defendant William Negron were convicted of the September 1, 1994 murders of Amy Merkes and Jorge Rodriguez and attempted murders of Jacqueline Grande ("Ms. Grande") and Kennelly Saez ("Mr. Saez"). *People v. Almodovar*, 2013 IL App (1st) 101476, ¶ 6 (1st Dist. 2013). The case against Mr. Almodovar centered primarily around the testimony of the two surviving victims, Mr. Saez and Ms. Grande, and their identification of Mr. Almodovar and Mr. Negron. *Id.* at ¶ 7. In late 1995 or early 1996, Your Honor (at the time in private practice) was retained to represent Mr. Almodovar, who at that time had been found guilty of murder but had not yet been sentenced. *See* Ex. 1 (Deposition transcript of Matthew Kennelly) at 7:16-9:5, 12:13-13:25. Your Honor represented Mr. Almodovar during his direct appeal and filed a post-conviction petition and an amended post-conviction petition on his behalf. *Id.* at 88:15-24, 89:20-25. While representing Mr. Almodovar, Your Honor's investigator obtained a post-trial statement from Mr. Saez stating that a police officer (later identified as Defendant Guevara) showed him photographs before a lineup in which Mr. Saez identified Mr. Almodovar. *See* Ex. 1 at 42:13-43:16, 44:11-19. Your Honor spoke to Mr. Saez directly regarding this and was present for this statement which occurred at Your Honor's law office. *Id.* at 44:11-45:13.

During Your Honor's representation of Mr. Almodovar, Your Honor filed a motion for a new trial. Ex. 1 at 14:11-15. Your Honor on behalf of Mr. Almodovar, argued among other things, that the State failed to produce *Brady* material that would have demonstrated Defendant Guevara lied about the circumstances of Mr. Saez's identification and that there were suggestive influences on Mr. Saez. *See* Ex. 2 (02/20/96, Defendant's Post Trial Motion in *People v. Roberto Almodovar*, No. 94 CR 24318-

2

01) at 23. Specifically, Your Honor also argued in that motion that Defendant Guevara falsified a police report and lied when he testified at Mr. Almodovar's criminal trial that he had never shown photographs of possible offenders to Mr. Saez. *Id.*

In the amended post-conviction petition that Your Honor filed on behalf of Mr. Almodovar, Your Honor again asserted that the prosecution violated *Brady* because it failed to produce evidence undermining the credibility of Guevara and shown that Guevara "engaged in a concerted effort to influence the identifications made by Saez and [Jacqueline] Grande and had then attempted to conceal this effort by preparing a false police report (stating that no photographs had been shown to Saez prior to the lineup)." *See* Ex. 3 (Amended Petition For Post-Conviction Relief in *People v. Roberto Almodovar*, No. 94 CR 24318-01) at ¶ 31. Your Honor also asserted that Mr. Saez's sworn statement (which, again, was obtained by Your Honor and Your Honor's investigator) established that "Detective Guevara testified falsely under oath at trial as to a material matter…" *Id.* at ¶ 31.

Moreover, according to Plaintiff, Sidley Austin LLP and its partner Scott Lassar conducted an investigation, at the request of the City of Chicago, into some of the murder investigations in which Defendant Guevara was involved including the investigation involving Mr. Almodovar. *See* Ex. 4 (Successive Petition for Post Conviction Relief in *People v. David Gecht*, No. 99 CR 7227) at ¶ 159. In November 2013, Your Honor was interviewed by Sidley Austin LLP attorneys and the attorneys generated a report of the interview. *See* Ex. 5 (Individual Officer Defendants' Motion for Recusal in *Serrano v. Guevara et al.*, No. 17 CV 2869, Dkt. 27-1) at 2-3. The report states, in relevant part, that Your Honor related that "Guevara's modus operandi was to pick a fall guy and get witnesses to go along with him" and "[Guevara] just wanted to close cases and to him, it didn't really matter which gang banger he arrested and had charged with the crime because they had all done something." *Id.* at 3.[2] In

---

[2] As for the report summarizing Your Honor's November 2013 with Sidley Austin LLP, Your Honor stated that the report inaccurately attributes statements and that Your Honor did not provide opinions during the interview regarding Defendant Guevara's modus operandi. *See* Ex. 7 at 14:18-16:16. Your Honor further

3

the 2013 interview with Sidley, a statement was also attributed to Your Honor to the effect that there was "no doubt" that Mr. Saez was "pushed" by Defendant Guevara into making an identification. *Id.* at Ex. A at 2. Moreover, according to this summary, Your Honor stated that Your Honor had interviewed Mr. Saez personally and had found him to be credible. *Id.* Your Honor also reportedly stated that Your Honor was "pretty convinced" that Mr. Almodovar was not guilty. *Id.*

Mr. Almodovar's attempt to challenge his conviction was eventually successful and he was released from prison and his conviction vacated. *See* Ex. 6 (First Amended Complaint in *Almodovar v. Guevara et al.*, No. 18 CV 02341) at ¶ 6. Mr. Almodovar later filed a civil lawsuit against Defendant Guevara, Defendant Halvorsen and several others arising from their work on his underlying criminal investigation. *Id.* In that lawsuit, Mr. Almodovar made wide ranging allegations of misconduct against Defendant Guevara and Defendant Halvorsen including, but not limited to, that they were involved in "fram[ing] Plaintiff for the murders by knowingly inducing false identification testimony from the young and traumatized victims of the crime through trickery, manipulation, suggestion, pressure, coercion, and other unlawful tactics" (*id.* at ¶¶ 3, 43-45, 51), "conceal[ed] and fabricate[d] evidence, manipulate[d] witness testimony, and maliciously prosecute[d] Plaintiff" (*id.* at ¶ 16), and procured false witness statements via suggestive identification procedures and other malfeasance and manufactured false inculpatory statements from Plaintiff himself (*id.* at ¶¶ 52-53, 55-58).

In 2021, Your Honor was deposed in Mr. Almodovar's civil case. During the deposition, Your Honor testified that, in 1998, Your Honor was prompted to file a post-conviction petition on behalf of Mr. Almodovar mainly because Mr. Saez recanted his identification and claimed that he had "been sort of buffaloed into identifying Mr. Almodovar as the shooter" by Defendant Guevara. Ex. 1 at

---

relayed that it was possible that Your Honor may have shared Almodovar's family members opinions about Defendant Guevara's modus operandi during the interview but that Your Honor did not convey any personal opinion of Defendant Guevara. *Id.* Nonetheless, the fact remains that this document at least appears to attribute this statement to Your Honor not Almodovar's family and, whether accurate or not, could potentially be used as a prior statement in the event the *Almodovar* matter becomes a disputed piece of evidence in this case.

42:13-43:3. When Your Honor was asked what he meant by the term "buffaloed," Your Honor testified that the "best way of describing [buffaloed] is basically look up what I alleged in the post-trial motion and post-conviction petition. That was just kind of a shorthand reference to cover the whole range of conduct." *Id.* at 87:1-88:9. Mr. Almodovar's civil case remains pending in the Northern District of Illinois. *See Almodovar v. Guevara, et al.,* 18 CV 2341.

### B. The *Serrano* Case And Your Honor's Recusal.

In April 2017, Armando Serrano filed a civil lawsuit, which was randomly assigned to this Court, against Defendant Guevara, Defendant Halvorsen and others in which he alleged that the defendants coerced a witness to testify that Serrano confessed to the witness about his role in the underlying murder. *See* Complaint in *Serrano v. Guevara et al.*, No. 17 CV 2869, Dckt. 1 at ¶ 1. As in this case, the *Serrano* Complaint specifically referenced Mr. Almodovar, the Sidley Austin investigation, and allegations of Defendant Guevara's misconduct in obtaining false witness identifications and false confessions in several other cases. *Id.* at ¶¶ 809, 57-68, 73-125, and fn 1. As a result, some of the defendants in the *Serrano* matter (including Defendant Guevara and Defendant Halvorsen) filed a motion to recuse Your Honor pursuant to 28 U.S.C. § 455(a) and § 455(b)(1). *See* Ex. 2.

Your Honor denied the motion as moot and determined *sua sponte* that recusal was appropriate because there was a "reasonably good chance" that "something having to do with the admissibility of evidence from the Almodovar case would come up" in the *Serrano* case. *See* Ex. 7 at 13:2-18. In so ruling, Your Honor found that he has "knowledge regarding the Almodovar case from representing Mr. Almodovar as counsel, and for that reason, I don't think that I could be perceived by a reasonable observer as able to impartially decide the admissibility of that evidence, so I think recusal is appropriate under Section 455(a)." *Id.* This ruling was made within the context of defendants' assertions that, in the event the plaintiff attempted to admit any Fed. R. 404(b) evidence against Detective Guevara, they might offer evidence relating to the *Almodovar* case even if the plaintiff elected not to do so because

5

the *Almodovar* case may shed light on the questionable nature of this pattern and practice evidence as a whole. *Id.* at 5:21-13:1. In particular, defense counsel pointed to the questionable nature of Mr. Saez's repeated changes in stories (including the one Your Honor was privy to) as matters that the defense may need to introduce as evidence. *Id.*

      **C.**      **The Present Case.**

In March 2000, Plaintiff David Gecht ("Plaintiff") was convicted of the January 29, 1999 murder of Roberto Cruz. In May 2022, Plaintiff's conviction was vacated and the charges dropped. On March 21, 2023, this lawsuit was filed by Plaintiff against Reynaldo Guevara, Geri Lynn Yanow, as special representative of the Estate of Ernest Halvorsen, Alan Pergande, Michael Muzupappa, Robert Rutherford, Edwin Dickinson, Francis Cappitelli and the City of Chicago as well as several former Assistant State's Attorneys from the Cook County State's Attorney's Office and Cook County. *See* Dckt. No. 1. This case was randomly assigned to Your Honor.

Plaintiff claims that Defendant Guevara, Defendant Halvorsen along with the other Defendants essentially framed him for his involvement in the Cruz murder. *See Id.* The alleged misconduct includes specific claims that Defendant Guevara, Defendant Halvorsen and other Defendants extricated an allegedly coerced incriminatory statement from Plaintiff using various allegedly coercive techniques such as physical abuse, deprivation of food and sleep, denial of access to a telephone call, denial of access to an attorney, feeding him information about the facts of the crime, and misrepresenting to Plaintiff that he could "go home" if he signed an incriminating statement. *Id.* at ¶¶ 40-57. Moreover, Plaintiff alleges that Defendants extricated false statements from other persons implicating Plaintiff in the Cruz murder. *Id.* at ¶¶ 58-76. This included not only two other alleged participants in the crime but also Plaintiff's girlfriend who claims Defendants compelled a false statement that Plaintiff had confessed to his involvement to her by threatening to charge her as an accessory to the crime and take away her child. *Id.*

Plaintiff claims that these Defendants fabricated evidence, "procured supposed eyewitness identifications of Plaintiff, which they knew to be false and unreliable, using unduly suggestive procedure," withheld exculpatory evidence "including evidence that that Defendants had manufactured false identifications of Plaintiff," coerced a confession from Plaintiff, maliciously prosecuted Plaintiff, inflicted emotional distress upon Plaintiff, and other related claims under state and federal law. *See* Dckt. No. 1 at Cts. I-V, VII. Plaintiff also brings a *Monell* claim against Defendant City based upon an alleged pattern and practice consistent with the above allegations. *Id.* at Ct. VI.

Plaintiff also references "the pattern of misconduct of Guevara and the other Defendants" as evidentiary support for his own underlying claims against both the individual officers (including, but not limited to Defendant Guevara and Defendant Halvorsen) and against the City of Chicago as part of his putative *Monell* claim. Dckt. No. 1 at ¶ 3 ("Because of the ample evidence Defendants fabricated and suppressed in order to frame Plaintiff for the Cruz murder, and because Defendants successfully hid the pattern of misconduct of Guevara and the other Defendants, Plaintiff's cries were ignored."); *id.* at ¶ 9 ("[T]he misconduct resulting in Plaintiff's wrongful conviction was part of a now well-known pattern of illegal activity perpetrated by Defendants Guevara, Halvorsen and the other Defendants."); *id.* at ¶ 10 ("Plaintiff is one of at least 39 men and women who have had convictions on murder charges vacated after being framed in corrupt homicide investigations conducted by Defendant Guevara and his fellow Area Five detectives and supervisors."); *id.* at ¶ 12 ("Cook County courts have found that 'Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations,' and that Defendant Guevara had told 'bald-faced lies' during court testimony and had 'eliminated any possibility of [] being considered a credible witness in any proceeding.'"); *id.* at ¶¶ 114, 126-133.

The alleged misconduct by Defendant Guevara and others that Plaintiff alleges he intends to rely on to prove his claims in this case includes "obtaining false eyewitness identifications through

7

manipulated identification procedures, manipulating witnesses, fabricating evidence, suppressing exculpatory evidence, and coercing false confessions and false statements from suspects and witnesses using physical and psychological violence, all in the course of maliciously prosecuting innocent persons." *Id.* at ¶ 128. To this end, Plaintiff specifically references the *Almodovar* matter as a possible source of evidentiary support for his underlying claims (both his individual liability claims presumably as putative Fed. R. Evid. 404(b) evidence as well as support for his *Monell* claim). *Id.* at ¶ 127.

Moreover, in seeking post-conviction relief in his underlying criminal case, Plaintiff specifically relied upon the *Almodovar* case and the allegations therein as a basis for seeking to have his conviction overturned as a result of Defendant Guevara's purported pattern of misconduct in other cases. Ex. 8 (Plaintiff's Pet. For Post-Conviction Relief) at ¶¶ 87-90, 98, 115, 123-125, 159, 200, 208. As noted above, this post-conviction relief was eventually granted and Plaintiff's conviction vacated. Indeed, the sole reason cited by the trial court in overturning this conviction was its finding that Defendant Guevara "engaged in a pattern and practice of misconduct." *See* Ex. 8 (Order Granting Post Conviction Relief) at 15-25. The trial court did not even rule upon Plaintiff's claims of actual innocence or claims of a *Brady* violation. *Id.* In other words, the entirety of the disposition of the post-conviction motion (which eventually lead to a dismissal of charges) was based upon pattern and practice allegations in *other* cases. *Id.* Similarly, in petitioning for a Certificate of Innocence ("COI"), Plaintiff again made specific references to Defendant Guevara's alleged misconduct in other cases and incorporated previous post-conviction pleadings (which referenced the *Almodovar* matter) as evidence supporting his award of a COI. *See* Ex. 9 (Pl.'s Pet. Cert. Inn.) at ¶¶ 2, 5. This COI was granted.

Plaintiff's claims here directly implicate the prior state court proceedings and the ultimate disposition thereof by asserting claims for Malicious Prosecution as well as other claims relating to the materiality of evidence supporting his initial conviction.

8

**ARGUMENT**

**Your Honor Should Recuse Under Either Section 455(a) or 455(b)(1)**

The same concerns that Your Honor identified in recusing himself from the *Serrano* case apply in the present case, and, in fact, the concerns are even more acute. There is a "reasonably good chance" that either Plaintiff or Defendants or both may attempt to introduce evidence regarding the *Almodovar* case. Indeed, insofar as *any* Fed. R. Evid. 404(b) evidence is proffered by Plaintiff in this case against Defendant Guevara and/or Defendant Halvorsen or is otherwise made the subject of discovery, Defendants may seek to introduce evidence or seek discovery concerning the *Almodovar* matter to rebut claims of a pattern or practice of misconduct by Defendant Guevara, Defendant Halvorsen or other relevant Defendants given the tenuous nature of the evidence (via so-called "reverse 404(b) evidence"). Given Your Honor's involvement in a proceeding, which may be the subject of discovery or an evidentiary dispute, recusal pursuant to 28 U.S.C. § 455(a) is appropriate. Alternatively, Defendants seek recusal under 28 U.S.C. § 455(b)(1) as a result of this Your Honor's personal knowledge of certain disputed evidentiary facts and possible perceived bias by a reasonable observer.

Section 455(a) "requires a federal judge to 'disqualify himself in any proceeding in which his impartiality might be questioned.'" 28 U.S.C. § 455(a). The purpose of the provision is to "promote public confidence in the integrity of the judicial process …. [which] does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989). Section 455(a) has been termed the "catchall" recusal provision, covering both "interest and relationship" and "bias and prejudice" grounds. *Liteky v. U.S.*, 510 U.S. 540, 548 (1994).

The standard in any case for a § 455(a) recusal is whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case. *Pepsico, Inc., v. McMillen*, 764 F.2d 458, 460 (7th

9

Cir. 1985); *see also U.S. v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016) ("Under § 455(a), all a party has to show is that a judge's impartiality *might* be questioned by a reasonable, well-informed observer.") (emphasis in original). This is an objective inquiry, *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996), and "simply requires the reasonable appearance of bias," *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004). There is inherent difficulty in applying this standard as a judge is "both [ ] its interpreter and its object." *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977). Observers outside of the judiciary "are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be." *U.S. v. Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998).

Under § 455(b)(1), a judge must recuse himself "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Like § 455(a), the inquiry under § 455(b)(1) is evaluated on an objective basis, *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000), and the inquiry to be made is "whether a reasonable person would be convinced the judge was biased." *Grove Fresh Dist., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002). "The bias or prejudice must be grounded in some personal animus or malice that the judge harbors… of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Id.* Bias or prejudice means a wrongful or inappropriate negative disposition, such as one based on extrajudicial knowledge or opinions that have no place in a judicial proceeding, or one so extreme that fair judgment becomes impossible. *Liteky*, 510 U.S. at 540. Separately, if a judge learns facts in an extrajudicial capacity which are disputed and may concern the proceeding, recusal is also required under 455(b)(1). *See U.S. v. State of Ala.*, 828 F.2d 1532, 1545 (11th Cir. 1987) (judge's statements as senator about unresolved vestiges of racial discrimination in education and involvement in civil cases which were being proffered as evidence of the "vestiges" of racial discrimination in education required recusal because evidence of these unresolved vestiges).

The alleged bias sufficient to warrant recusal under both § 455(a) & § 455 (b)(1) must stem from an extrajudicial source. *Liteky*, 510 U.S. at 554. The "extrajudicial source" doctrine requires the judge's perceived bias to derive from a source outside the current or prior judicial proceedings conducted by the same judge. *Id.* at 554-55.

### A.     Recusal Under 455(a).

In this case, recusal is appropriate under 28 U.S.C. § 455(a) because a well-informed, thoughtful observer might reasonably question Your Honor's impartiality in ruling on the admissibility or inadmissibility of evidence (as well as the discoverability of same) concerning both Mr. Almodovar's case in particular and the pattern and practice allegations and evidence against Defendant Guevara in general. Given that Plaintiff's allegations and Mr. Almodovar's allegations against Defendant Guevara and Defendant Halvorsen both involve allegations of coercing witnesses, false reports and testimony, and *Brady* due process violations and given Plaintiff's explicit reference to Mr. Almodovar in the Complaint, Mr. Almodovar (and other witnesses relating to his underlying case including Your Honor) may be 404(b) or *Monell* witnesses during discovery in this case or witnesses at trial.

Evidence about Defendant Guevara's specific interaction with Mr. Saez, or Mr. Saez himself as a witness, may be offered as evidence in this case. In Plaintiff's Successive Petition for Post-Conviction Relief, Plaintiff contends Defendant Guevara "manipulated the false identification of Kennelly Saez," which led to the alleged wrongful conviction of Mr. Almodovar. *See* Ex. 4 at ¶ 200. Defendants, of course, intend to oppose such a contention. Reviewing courts have consistently found Mr. Saez's post-trial testimony and three separate recantations incredible. *See e.g., People v. Almodovar,* 2013 IL App (1st) 101476 at ¶¶ 53, 56, 74.[3] Defendants may use the evidence on which these courts

---

[3] Mr. Saez originally testified that Detective Guevara did not tell him who to pick before he identified Almodovar and his co-defendant in a lineup; next, Saez recanted his identification to Almodovar's then-attorney Melinda Power; Saez then testified that his recantation to Ms Power was a lie, and that a gang leader had told him to say that he could not identify the shooters; Saez then later testified that in the presence of the other eyewitnesses (Jackie Grande), he saw shown photos of Almodovar and his co-defendant to influence his lineup identification and was told not to mention being shown the photos. *Id.* at ¶¶ 12-14, 39, 42-45. In contrast,

11

relied to rebut the "pattern" allegations against Defendant Guevara and also specifically to attack the credibility of Mr. Saez as to his recantation and Mr. Almodovar in general. In other words, even if Plaintiff decides not to affirmatively introduce evidence concerning the *Almodovar* case but is permitted to introduce *other evidence* under Rule 404(b) or seek discovery into same, Defendants may nonetheless seek discovery or to introduce evidence concerning Mr. Saez and the *Almodovar* case.

The most acute problem here is that Your Honor personally interviewed Mr. Saez and reportedly found him to be credible. Your Honor also opined about Mr. Almodovar that he was "pretty convinced" that Mr. Almodovar was not guilty and, thus, the insinuation is that Your Honor concluded that Mr. Almodovar had been wrongfully convicted. Given this evidence and Your Honor's statements regarding same, there is a reasonable basis to question the appearance of impartiality in ruling on issues relating to this same evidence.

In the event that this evidence is the subject of discovery or potential admission at trial, there is a very strong likelihood that Your Honor could be an *actual witness*. Again, Defendants are in a position where they will need to challenge the veracity and credibility of Mr. Saez and Your Honor was personally privy to one of his ever-changing statements via its communication with Mr. Saez and, in fact, made observations and reached conclusions about the veracity and credibility of same. Suffice it to say, it would be exceedingly problematic for Your Honor to serve as both a corroborating witness for a recantation and a judge in the same proceeding where this recantation is being challenged.

Separately, again, Plaintiff specifically relied upon Mr. Almodovar's claims as support for a theory that Defendant Guevara had a history of engaging in similar acts of misconduct to arrestees/criminal defendants as a basis for having his conviction vacated and in seeking a COI. Because Plaintiff alleges a claim for Malicious Prosecution and makes a claim of an unfair trial in

---

Grande testified she was only once shown a photo array but never told which photos to pick, was sure the persons she picked (including Almodovar) were the right persons, and never in her presence was Saez shown photographs or told who to pick. *Id.* at ¶¶ 15-18, 48-49.

violation of the 14th Amendment, the underlying evidence and arguments made by Plaintiff in ultimately obtaining the vacating of his conviction and a COI may become relevant separate and apart from the admissibility of evidence under Fed. R. Evid. 404(b) because they relate to a *prima facie* element of several of his claims.

For his Malicious Prosecution claim, Plaintiff must establish his prosecution terminated in his favor and was indicative of innocence. *Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 576 (7th Cir. 2009); *Swick v. Liautaud*, 169 Ill.2d 504 (1996). Plaintiff presumably intends to introduce the vacatur of his conviction and his COI in order to satisfy this element. Whether a disposition is truly "indicative of innocence" is a fact intensive inquiry. *See Bass v. Hansen*, 2011 WL 1337092, *2-3 (N.D. Ill. 2011). Defendants are, thus, permitted to introduce evidence relating to the specific manner and theories on which the criminal termination was procured in order to rebut this element to show that the vacating of the conviction or the COI were procured on faulty bases, based on misstatements of evidence, misconduct of the accused or otherwise not truly a favorable termination under the circumstances. *See Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 97-98 (1st Dist. 2008) (modification of witness testimony from underlying criminal proceeding admissible in civil case); *see also Swick*, 169 Ill.2d at 513 (favorable termination does not exist if it is "the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or impracticability of bringing the accused to trial."); *Payne v. Maher*, 2015 WL 4483954 (N.D. Ill. 2015). Similarly, for the purposes of a 14th Amendment claim, the totality of the criminal trial record must be examined to determine whether allegedly fabricated or suppressed evidence was material. *United States v. Agurs*, 427 U.S. 97, 114 (1976) (trial record and theories must be examined to determine materiality); *Jimenez v. City of Chicago*, 732 F.3d 710, 719 (7th Cir. 2013) (trial record of underlying prosecution relevant to due process claim).

As a result, given Plaintiff's express reference to Defendant Guevara's alleged misconduct in the *Almodovar* case and others as a basis for overturning his conviction, Defendants may be put in a position where they need to establish that the so-called modus operandi evidence of Defendant Guevara set forth in Plaintiff's post-conviction proceeding and his Petition for COI is evidentiarily flawed or otherwise inconsistent with the actual facts of those case and others in order to rebut several *prima facie* elements of Plaintiff's underlying claims.

Even if a reasonable person would not question Your Honor's impartiality based on the above factors when considered separately, a thoughtful observer could come to the conclusion when those factors are considered together. For example, in *Fairley v. Andrews*, 423 F.Supp.2d 800 (N.D. Ill. 2006), Judge Castillo found that none of his "individual statements, when viewed in their proper context, warrant[ed] recusal under section 455(a)." *Id.* at 821. "However, in doing the required self-evaluation under this section," Judge Castillo also found "that all of this Court's statements and interactions with Defendants in this case, *taken together*, may give pause to a non-legal observer, not versed in the ways of the courtroom and the risks of litigation." *Id.* (emphasis added). Judge Castillo therefore concluded that "the reasonable person standard under section 455(a) has been satisfied and that this Court's recusal is required." *Id.* This was especially true where "reasonable minds may disagree as to whether recusal is appropriate in this matter under section 455(a)," because "'outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" *Id.* at 820-21. These same considerations apply here.

Like *Serrano* there is a "reasonably good chance" that Your Honor may have to decide the admissibility of evidence regarding a case in which Your Honor participated as counsel. Moreover, given Your Honor's status as a witness in the *Almodovar* case, there is a distinct possibility that Your Honor could be called as a witness at trial in that case while the present case is pending. Accordingly, Your Honor's reasoning for its own recusal in *Serrano* are even more compelling in this case.

### B. Recusal Under 455(b)(1).

With respect to 455(b)(1), in the alternative, recusal is also appropriate. In the event that evidence regarding Mr. Almodovar's case is sought to be admitted by either party (which appears likely), Mr. Saez may be called upon to testify as to his experiences with Defendant Guevara and Mr. Saez's shifting stories will almost certainly be front and center on this evidentiary presentation. However, again, Your Honor personally interviewed Mr. Saez in an extrajudicial capacity and opined as to Saez's credibility as a witness. Your Honor also personally interviewed Mr. Almodovar and opined that Your Honor was "pretty convinced" that Mr. Almodovar was not guilty. In the event evidence about Mr. Almodovar is sought to be introduced, Defendants will likely contend Mr. Saez is not a credible witness as to his accusations against Defendant Guevara and may pursue an evidentiary theory that Mr. Almodovar was, indeed, likely guilty but was the fortuitous recipient of a highly suspicious recantation and a procedural victory unrelated to his actual guilt or innocence. In order to address the circumstances of Mr. Saez's recantation, as noted above, it is highly likely that Your Honor may become directly involved as a witness on this issue. As a result of Your Honor's work on the *Almodovar* case, Your Honor has obtained personal knowledge of disputed evidentiary facts concerning the proceeding which arise from "an extrajudicial source" under 455(b)(1).

Further, based on the opinions attributed to Your Honor in the Sidley Austin LLP Report about Defendant Guevara's modus operandi of misconduct, a reasonable person (whether accurate or not) may be convinced Your Honor is biased. Those attributed statements indicate Your Honor may be inclined to presuppose that Defendant Guevara engaged in the modus operandi of misconduct that has been alleged against him – not only in the *Almodovar* matter, but other cases as well – and exercise discretion to admit such evidence over the objection of Defendants. Moreover, again, Your Honor has already expressed opinions in an extrajudicial capacity about the veracity of Mr. Almodovar being subjected to a wrongful conviction at the hands of Defendant Guevara. Thus, given the severity

of such an allegation, a reasonable observer could find Your Honor unable to fairly and impartially preside over a case involving Defendant Guevara making similar allegations. Thus, Your Honor's disqualification is appropriate under 455(b)(1) as well.

## CONCLUSION

WHEREFORE for the reasons stated above, Defendants respectfully request Your Honor recuse himself from this case pursuant to 28 U.S.C. § 455(a) or, in the alternative, pursuant to 28 U.S.C. § 455(b)(1), and for whatever other relief this Court deems fit.

Respectfully submitted,

By: /s/ Timothy P. Scahill
Special Assistant Corporation Counsel
Timothy P. Scahill
Steven B. Borkan
Misha Itchhaporia
Whitney Hutchinson
Molly Boekeloo
Borkan & Scahill, Ltd.
20 S. Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030
*Attorneys for Reynaldo Guevara*

By: /s/ Eileen E. Rosen
Special Assistant Corporation Counsel
Eileen E. Rosen
Catherine M. Barber
Theresa Berousek Carney
Austin G. Rahe
Rock Fusco & Connelly, LLC
333 W. Wacker 19th Floor
Chicago, Illinois 60606
(312) 494-1000
*Attorneys for Defendant City of Chicago*

By: /s/ Josh M. Engquist

Special Assistant Corporation Counsel
James G. Sotos
Josh M. Engquist
Jeffrey R. Kivetz
Allison L. Romelfanger
Elizabeth R. Fleming
Kyle T. Christie
Mark F. Smolens
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., Suite 1240A
Chicago, IL 60604
Tel: (630) 735-3300
*Attorneys for Defendants Pergande, Muzupappa, Rutherford, and Dickinson*