### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAVID GECHT,

        Plaintiff,

    vs.

REYNALDO GUEVARA, ET AL.

        Defendants.

1:23-cv-01742

Honorable Nancy L. Maldonado

### DEFENDANTS HOOD'S AND MCGUIRE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR, ALTERNATIVELY, FOR A MORE DEFINITIVE STATEMENT

Now come Defendants Honorable Michael J. Hood and Brendan McGuire (incorrectly captioned and named "Brendan Maguire") (collectively "ASA Defendants"), by and through their attorneys, O'MARA & O'CALLAGHAN, LLC, and respectfully move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); or, alternatively, respectfully move for Plaintiff to be ordered to provide a more definitive statement for his claims pursuant to Federal Rule of Civil Procedure 12(e). In support thereof, ASA Defendants state as follows:

### RELEVANT FACTUAL BACKGROUND

For the purposes of this Motion to Dismiss, only the well-pleaded facts in Plaintiff's Complaint are accepted as true. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). On January 29, 1999, near Bristol's nightclub (the "nightclub"), Roberto Cruz ("Decedent Cruz") was found dead and with multiple gunshot wounds next to his vehicle after having spent time in the nightclub earlier. *Plaintiff's Complaint* (hereinafter "*Compl.*") ECF No. 1, at ¶¶28-30. A bouncer gave detectives the descriptions of two people who had argued with Decedent Cruz earlier that evening, including that one was 6'1" in height. *Id.* at ¶31. The day after the shooting, an anonymous caller provided a tip to detectives, gave corroborating information, and stated that the men

responsible for Decedent Cruz's murder were Ruben H. ("Ruben") and Benjamin D. ("Benjamin") and that they were bragging about shooting Decedent Cruz. *Id.* at ¶¶33-34. Based on this information, Detectives Guevara and Halvorsen pulled the rap sheets for Benjamin and Ruben, that of Benjamin indicating he was 6'3" in height. *Id.* at ¶¶35-36. Decedent Cruz's mother also indicated to detectives that Decedent Cruz was enemies with Ruben and Benjamin. *Id.* at ¶36.

After five weeks of investigation, Ruben and Richard Kwil ("Kwil") gave statements to police officers implicating themselves and Plaintiff for the murder. *Id.* at ¶¶33-34, 58, 62, 65. Officers also questioned Plaintiff's girlfriend Colleen Miller ("Miller"), who stated that Plaintiff had confessed to her about the murder. *Id.* at ¶70. Plaintiff claims that Kwil's, Ruben's, and Miller's statements were obtained as a result of coercion and "pressure and threats." *Id.* at ¶¶59-65, 74. For purposes of this Motion, the Court should note that Plaintiff names Defendant Hood only in allegations relating to Kwil's confession.

After obtaining the aforementioned three statements, police officers arrested Plaintiff, who was 18 at the time, and brought him to Area Five police station for questioning. *Id.* at ¶¶40-42, 85. Plaintiff initially denied involvement with the crime. *Id.* at ¶42. Plaintiff was allegedly subjected to "hours" of coercive tactics by officers, including denial of phone calls, food, and sleep. *Id.* at ¶¶43-50. Plaintiff confessed to police officers to shooting Decedent Cruz with the assistance of Kwil and Ruben. *Id.* at ¶52. After Plaintiff confessed to officers, Defendant McGuire took a statement from Plaintiff. *Id.* at ¶53.

During Plaintiff's trial in March 2000, his girlfriend, Miller, testified that Plaintiff had confessed to her, and Plaintiff's confession was published to the jury. *Id.* at ¶¶77-78, 80-81. Plaintiff testified that his confession was false and was a result of abusive tactics employed by Detective Guevara, but he did <u>not</u> testify that ASA Defendants employed abusive or coercive

2

tactics. *See generally* Compl.; *see, also, id.* at ¶82. Plaintiff was ultimately convicted and was sentenced to 45 years in prison. *Id.* at ¶¶4, 84. In May 2022, after filing a petition for post-conviction relief, Plaintiff's conviction was vacated and all charges against him were dropped. *Id.* at ¶14. In March 2023, Plaintiff was granted a certificate of innocence. *Id.* at ¶15.

## SUMMARY OF THE CLAIMS

Plaintiff has asserted three federal law claims against both Police Officer Defendants and ASA Defendants. Plaintiff alleges the following three federal claims pursuant to 42 U.S.C. §1983: (i) a coerced and false confession claim in violation of Plaintiff's Fifth and Fourteenth Amendment rights (Count II); (ii) a malicious prosecution and unlawful detention claim in violation of Plaintiff's Fourth and Fourteenth Amendment rights (Count III); and a failure to intervene claim (Count IV). *Id.* at ¶¶146-66. Against both Police Officer Defendants and ASA Defendants, Plaintiff alleges the following three state law claims: (i) malicious prosecution (Count VII); intentional infliction of emotional distress (Count VIII); and willful and wanton conduct (Count IX). *Id.* at ¶¶186-98. In sum, Plaintiff alleges that ASA Defendants, "while acting in his [sic] investigatory capacity" and prior to the existence of probable cause, "manufactured and fabricated coerced confessions and statements from Plaintiff and other witnesses" in order to maliciously prosecute Plaintiff. *Id.* at ¶24. The remaining claims are not alleged against ASA Defendants.[1]

While the remaining claims in Plaintiff's Complaint appear to not be against ASA Defendants, it is difficult to ascertain to whom many of the allegations are directed. Plaintiff makes the distinction between "Police Officer Defendants" and "Prosecutor Defendants," yet he

---

[1] Against only the Police Officer Defendants, Plaintiff alleges the following three claims: (i) a federal due process claim in violation of his Fourteenth Amendment rights (Count I); (ii) a federal conspiracy claim (Count V); and (iii) a state law claim of civil conspiracy (Count X). *Id.* at ¶¶134-45, 167-73, 199-204. Against only the City of Chicago, Plaintiff alleges the following two claims: (i) a federal "policy and practice" claim (Count VI); and a state law claim of *respondeat superior* (Count XI). *Id.* at ¶¶174-85, 205-07. Finally, against the City of Chicago and the County of Cook, Plaintiff alleges a state law claim of indemnification (Count XII). *Id.* at ¶¶208-13.

frequently uses the ambiguous collective term "Defendants" throughout the Complaint.[2] In many cases, it is clear that Plaintiff uses the term "Defendants" in allegations that do not apply to the ASA Defendants.[3] Defendant ASAs should not be obligated to parse through Plaintiff's ambiguous Complaint to figure out which claims they are defending themselves against. Plaintiff is capable and obligated to plead more clearly.

## LEGAL STANDARD

To meet Rule 12(b)(6) pleading requirements, a plaintiff's complaint must "state a claim to relief that is plausible on its face." *McCauley*, 671 F.3d at 615 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The Complaint must "'provid[e] some specific facts' to support the asserted legal claims" and "contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *McCauley*, 671 F.3d at 616. In reviewing the sufficiency of a plaintiff's claims, the Court must "accept the well-pleaded facts in the Complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*

Under Rule 12(e), a party may move for a more definite statement of a pleading where such pleading is so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). The motion must point out the defects complained of and the details desired. *Id.* The purpose of a motion for a more definite statement under Rule 12(e) is to clear up confusion,

---

[2] *See, generally, id.*; see, also, *id.* at ¶¶2-3, 8-9, 14, 16, 25, 40, 42, 43, 44, 51-55, 57, 58, 62, 68, 70, 73, 74, 76, 80, 83, 86, 90, 98-101, 113, 123, 133.

[3] For example, in Paragraph 25, Plaintiff alleges that City of Chicago was the employer of Police Officer Defendants and is thus responsible for all torts committed by Police Officer Defendants, but then interchangeably says that each of the general individual Defendants (rather than "Police Officer Defendants") acted as agents or employees of the City of Chicago. *Id.* at ¶25. Further, in Count I, all of Plaintiff's allegations specifically name Police Officer Defendants a total of eight times, but the allegations switch to naming "Defendants" generally on three occasions without making any specific allegations naming ASA Defendants therein. *See id.* at ¶¶134-145. Plaintiff even alleges that Cook County "was at all relevant times the employer of Prosecutor Defendants" yet later makes claims relating to "members of the Chicago Police Department, including the *Defendants* in this action." *Id.* at ¶¶26, 99 (emphasis added).

4

but not to replace discovery. *Sheen v. Bil-Jax, Inc.*, 1993 U.S. Dist. LEXIS 17593, at *3 (N.D. Ill. Dec. 6, 1993).

## ARGUMENT

### I. THE ASA DEFENDANTS' CONDUCT OF REVIEWING AND MEMORIALIZING STATEMENTS ALREADY OBTAINED BY POLICE IS QUASI-JUDICIAL AND PROTECTED BY IMMUNITY.

Prosecutors are absolutely immune from federal § 1983 suits for damages for actions they take that are "intimately associated with the judicial phase of the criminal process . . . ." *Buckley v. Fitzsimmons* ("*Buckley I*"), 509 U.S. 259, 273 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976); *Hunt v. Jaglowski*, 926 F2d 689, 692-93 (7th Cir. 1991). Where applicable, absolute immunity provides "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

The test to determine whether a prosecutor's conduct is protected by absolute immunity is a "functional approach," which requires the court to look to the "nature of the function performed" as opposed to *who* is performing the function. *Buckley I,* 509 U.S. at 269. This includes "quasi-judicial" acts taken even *before* the initiation of criminal charges (e.g. reviewing evidence to make a charging recommendation). *Id.* at 273; *see, also*, *Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997). Absolute immunity also protects "[p]reparation, both for the initiation of the criminal process and for a trial, [and] may require the obtaining, reviewing, and evaluating of evidence." *Imbler*, 424 U.S. at 431, n.33. Taking a suspect's statement following an officer's interview is considered part of a prosecutor's advocacy role of evaluating and preparing evidence, and "a prosecutor should not be deprived of immunity because, in a case of murder, he decides to hear what the defendant has to say for himself." *Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009); *see, also*, *Hampton v. City of Chi.*, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004). Prosecutors are entitled to absolute immunity under Illinois law as well, with Illinois courts and courts in this

District having applied the pronouncement of absolute immunity in *Imbler*. *See, e.g., White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006); *Harris v. City of Chicago*, 2015 LEXIS 34835, at *19 (N.D. Ill. 2015).

When considering whether a prosecutor is immune from suit, a court should focus on the *conduct* for which immunity is claimed rather than "the *harm* that the conduct may have caused or the question whether it was lawful." *Buckley I*, 509 U.S. at 271 (emphasis added). Here, on the final day of a five-week investigation, ASA Defendants were called to review and evaluate witnesses and witness statements—which as pleaded—were already obtained by the Police before they were memorialized in written form by the ASA Defendants. Interviewing witnesses in this context is not investigatory, such conduct is part of initiating a judicial proceeding. *Hampton*, 349 F. Supp. 2d at 1081. Therefore, the actual *conduct* complained of—interviewing witnesses after a five-week investigation immediately before determining whether to file charges—is prosecutorial and protected by absolute immunity. *See Buckley I*, 509 U.S. at 271.

Plaintiff makes the conclusory allegations that prior to the existence of probable case, ASA Defendants acted "in his [sic] investigatory capacity" by manufacturing and fabricating coerced confessions and statements from Plaintiff and other witnesses. Compl. ¶¶24, 147, 148, 149, 156, 187. However, this allegation is belied by Plaintiff's own allegations as to the timing of acts of the ASA Defendants.

In fact, Plaintiff alleges that all three statements were taken by the ASA Defendants, *after* the Police had obtained their statements using abusive tactics prior to the ASA's arrival and outside their presence. *See* Compl. ¶¶50-53 ("Police Officer Defendants hit Gecht on multiple occasions. …[Police Officer Defendants] fed Gecht details about the crime. …Exhausted, hungry, beaten,

and bloody…he agreed to give a statement. Gecht _then_ gave a statement to Defendant Maguire.")
(emphasis added.)

Plaintiff makes similar allegations as to the timing of Kwil's and Ruben's statements. *See*
Compl. ¶¶60-62 ("[W]hen Kwil was questioned…his denials were ignored, instead the Police
Officer Defendants subjected him to repeated interrogations…threatened him…and promised him
he could go home. …He [then] agreed to give a statement. …He repeated the facts that had been
fed to him by the Defendants."). That statement was taken by ASA Defendant McGuire after it
was also pleaded to have first been obtained by Police Defendants.

Regarding Ruben's statement, Plaintiff again has pleaded his statement was obtained by
the Police Officer Defendants before an ASA Defendant memorialized it. *See* Compl. ¶¶63-65
("The same thing happened with Ruben. When the Police Officer Defendants initially interrogated
him, he did not implicate Gecht. The Police Office Defendants subjected Ruben to physical and
psychological abuse, and they fed him facts about the crime. …Ruben then gave a court-reported
[sic] including false statements implicating Gecht."). This statement was taken by ASA Defendant
Hood after it was pleaded to have first been obtained by Police Officer Defendants. From the three
summaries of the Complaint regarding the timing of the ASA's actions related to these statements,
Plaintiff's contention that there was no probable cause at the time the ASAs acted is contradicted
by his own pleading.

Even if Plaintiff had alleged that ASA Defendants knew about the abusive tactics at the
time they took the statements, prosecutors are shielded by absolute immunity even where they act
"maliciously, unreasonably, without probable cause, or even on the basis of false testimony or
evidence." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003); *see, also*, *Imbler*, 424 U.S. at 995-
96 n.34 (holding that absolute prosecutorial immunity even extends to a prosecutor who willfully

uses perjured testimony and suppresses exculpatory information). This is because the test for absolute immunity assesses the function of the prosecutor, not the wrong. A felony review ASA taking a statement from a suspect following an illegal coercive interrogation remains a prosecutorial function even in a situation where the prosecutor knows about the misconduct. *See Hunt*, 926 F. 2d at 692-693.

Here, at best Plaintiff alleges ASA Defendants memorialized statements which they knew were obtained as a result of officers' misconduct. But this Court is not supposed to analyze the wrong, but rather the context or the function of the prosecutor, which in this case was reviewing and evaluating witnesses and witness statements obtained by officers after a five-week investigation.

In addition, ASA Defendants' absolute immunity is strengthened where the Complaint, on its face, establishes probable cause existed before the involvement of ASA Defendants. While the presence or absence of probable cause is not dispositive in the absolute immunity inquiry, many courts evaluate whether (and when) probable cause existed in their determination of whether a prosecutor's conduct is quasi-judicial or investigatory. *Buckley*, 509 U.S. at 274, n.5. Generally, the existence of probable cause prior to a prosecutor's involvement weighs in favor of absolute immunity, but the existence of probable cause has not been held as a necessary condition for absolute immunity to apply. *Harris v. City of Chi.*, 330 F.R.D. 508, 515 (N.D. Ill. 2018) (one reason for finding the felony review prosecutor immune from suit was that his involvement with the plaintiff was only after probable cause had been established). However, once there is probable cause to arrest, then the prosecutor's role is no longer investigatory. *Whitlock v. Brueggemann,* 682 F.3d 567, 580 (7th Cir. 2012).

Here, taking the facts alleged by Plaintiff, ASA Defendants went to Area Five to review and evaluate witnesses and witness statements after a five-week investigation. The Complaint, on its face, contains the probable cause that existed prior to the involvement of the ASA Defendants. The Complaint states that there was an anonymous tip that co-offender Ruben, a rival of Decent Cruz, was involved in the murder; that Ruben gave a statement identifying Kwil and Plaintiff as participants; that Kwil gave a similar statement implicating Plaintiff; and that Plaintiff's girlfriend, Miller, had told officers that Plaintiff had confessed to her. Moreover, the Complaint alleges that the ASA Defendants conducted their interviews <u>after</u> officers had conducted theirs. "It is reasonable, indeed desirable" for a prosecutor to "question [a] plaintiff himself to verify the confession obtained by the police before making his own decision whether or not to file charges." *Harris,* 2015 U.S. Dist LEXIS 122500, at *3. ASA Defendants' decision to speak to witnesses before filing charges was reasonable, quasi-judicial in nature, and thus protected by absolute immunity.

For the aforementioned reasons, ASA Defendants' conduct was quasi-judicial and thus protected by absolute immunity. Accordingly, ASA Defendants respectfully request this Court to dismiss Plaintiff's federal and state-law claims against them.

## II. EVEN IF ABSOLUTE IMMUNITY DOES NOT APPLY, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A VIABLE CLAIM.

The Supreme Court in *Iqbal* set forth a two-pronged analysis when reviewing 12(b)(6) dismissals. *Ashcroft,* 556 U.S. at 663-64. First, pleadings consisting of conclusory allegations are not accepted as true when reviewing the Complaint's sufficiency. *Id*. This includes conclusory statements "couched" as factual allegations, and recitations of the elements. *Id*. at 678. Second, after excising the conclusory allegations from the Complaint, any well-pled factual allegations are

accepted as true and then the Court must determine whether the remaining well-pled facts "plausibly give rise to an entitlement of relief." *Id*. at 679.

### A. Plaintiff's Allegations Amount to Unsupported Conclusions and Ambiguous Group-Pleading.

Plaintiff has failed to sufficiently plead, beyond conclusory allegations and ambiguous group-pleading, how ASA Defendants had personal involvement in Plaintiff's constitutional deprivation. Liability under §1983 is premised on the wrongdoer's personal responsibility: having caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow,* 678 F.3d 552, 555-556 (7th Cir. 2012); *Bank of Am. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Allegations that "defendants" committed some act(s), "without any details about who did what . . . is inadequate" and "does not propound a plausible contention that a particular person did anything wrong." *Knight*, 725 F.3d at 818. "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (internal quotation marks omitted); *Gentry v. Duckworth,* 65 F.3d 555, 761 (1995)) (personal involvement requires the individual to "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye"). Indeed, "mere presence" at a police station "while coercion was going on outside the prosecutor's presence is not enough to make a plausible complaint that the prosecutor crossed the line into illegality." *Andrews,* 660 F. Supp. 2d at 878.

Complaints based on a theory of collective responsibility should be dismissed because that "kind of [group] pleading is indeed inadequate, because it provides no clues as to whether, for the particular conduct described, plaintiffs assert that each and every one of the defendants engaged in that conduct . . . or whether plaintiffs instead contend that only some of the defendants, or

possibly even *none* of them, performed a given act. *Atkins*, 2015 U.S. Dist. LEXIS 80176, at *8-9.

In this Complaint, there are 213 enumerated paragraphs which contain allegations against ten distinct defendants. Setting aside the two paragraphs which allege only that McGuire and Hood were Assistant State's Attorney's employed by Cook County (*see* Compl. ¶24), Defendant Hood is only named <u>once</u> and Defendant "Maguire" [sic] is only named four times. *See* Compl. ¶¶53, 56, 67, 75. To disguise his lack of any factual basis to include the ASA Defendants in this suit, Plaintiff deceptively relies on the use of the ambiguous, collective term "*Defendants*" in the overwhelming number of his allegations. *See id.* at ¶¶2-3, 8-9, 14, 16, 25, 40, 42, 43, 44, 51-55, 57, 58, 62, 68, 70, 73, 74, 76, 80, 83, 86, 90, 98-101, 113, 123, 133. Plaintiff's use of these group-pleadings fails to give ASA Defendants adequate notice as to how each was purportedly *personally* involved in the conduct described. As a result, all Counts which rely on group pleading allegations—which is all of the Counts—should be dismissed for failure to satisfy federal pleading requirements. *See* Fed. R. Civ. P. 8.

Plaintiff's conclusory allegations that ASA Defendants "participated personally in fabricating" each witness statements have no further factual allegations. *Id.* at ¶¶56, 67, 75. This is the type of bare, conclusory allegation against the ASA Defendants is exactly the type which *Twombly/Iqbol* has ruled is insufficient. For further evidence of the paucity and conclusory nature of the allegations against the ASA Defendants, one must only look to the remainder of the Complaint.

The Complaint contains facts describing the acts of the Defendant Officers, but nowhere does it specify what the ASA Defendants did to support Plaintiff's bare allegation that they "participated personally in fabricating" witness statements. *See* Compl. ¶60 ("…Police Officer

Defendants subjected [Kwil] to repeated interrogations…"); ¶64 ("Police Officer Defendant then subjected Ruben to physical and psychological abuse…") ¶ 72("…[Miller] only agreed to sign a statement falsely claiming that [Gecht] confessed because of police treats."). This Complaint fails to meet the pleading standards of *Twombly/Iqbol* as to the ASA Defendants.

While the Complaint contains specific allegations against the Police Defendants, it provides *none* against Defendant Hood. Against him, there is a sole allegation that he "participated in personally fabricating the false incriminating statement of Kwil and Ruben." *See* Compl. ¶67. There are simply no other factual allegations against Hood anywhere in the Complaint. As to Defendant McGuire, Plaintiff makes the conclusory allegation that he "participated personally in fabricating the false incriminating statement" of Plaintiff, Kwil, and Ruben. *See* Compl. ¶¶56, 67. Again, there are no other factual allegations against Defendant McGuire anywhere in the Complaint. Such bare assertions are not enough to satisfy the *Twombly/Iqbol* pleading standard.

Setting aside that conclusory allegations are insufficient to state a viable claim (*see McCauley*, 671 F.3d at 617), these allegations personally naming McGuire and Hood only apply to Plaintiff's claim of a coerced and false confession in Count II. In other words, disregarding the allegations which are improperly group-pleaded, the Plaintiff has not alleged sufficient facts to support the remaining two federal Counts and three state law Counts against the ASA Defendants. *See, respectively*, Compl., Counts. III, IV, VII, VIII, and IX. However, as stated, these allegations that personally name McGuire and Hood merely recite the conclusions necessary for a claim of a coerced and false confession without any allegations providing factual support, which is also insufficient. Plaintiff's ambiguous group-pleading and conclusory allegations do not meet federal pleading standards because Plaintiff's allegations do not sufficiently put ASA Defendants on notice of the wrongdoing alleged against them. *See Knight*, 725 F.3d at 818. Without sufficiently

alleging ASA Defendants' personal involvement, Plaintiff's §1983 claims should be dismissed. *See Kuhn*, 678 F.3d at 555-56.

> **B.  Count II Should Be Dismissed Because Plaintiff Fails to Sufficiently Allege That ASA Defendants Participated in Obtaining His Alleged Coerced, False Confession.**

Plaintiff alleges that ASA Defendants violated his Fifth and Fourteenth Amendment rights by "acting as investigators and without probable cause" and "forc[ing] Plaintiff to make false [incriminating] statements involuntarily and against his will." Compl. ¶¶146-54 (Count II). Fifth and Fourteenth Amendment violations are evaluated under different standards. Fourteenth Amendment violations result from "conscience-shocking" conduct, whereas Fifth Amendment violations require a fact-based evaluation of whether a statement was involuntary, based on the totality of the circumstances of the interrogation. *Hyung Seok Koh v. Graf,* No. 11 C 02605, 307 F. Supp. 3d 827, 850 (N.D. Ill. 2018). Under either standard, looking at Plaintiff's Complaint and disregarding conclusory allegations, Plaintiff's claims are insufficient as to the ASA Defendants and should be dismissed.

First, in order to succeed on a claim under the Fourteenth Amendment, a plaintiff must show that his substantive due process rights were violated by an executive action or abuse of power, that "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 (1998). While there is no clear-cut analysis for what is or is not conscience-shocking, "the bar for conscience-shocking conduct is extraordinarily high." *Koh*, 307 F. Supp. 3d at 850, (*citing Hurt v. Wise*, 880 F.3d 831, 844 (7th Cir. 2018)) (internal quotation marks omitted). Here, Plaintiff does not allege that ASA Defendants were the individuals who used coercion, pressure, or threats to obtain statements from Plaintiff, Kwil, Ruben, or Miller. *See* Compl. ¶¶59-65, 67, 70-74.

Plaintiff's allegations employ ambiguous group-pleading to mischaracterize ASA Defendants as being personally involved in the behavior of the interrogating officers. Even if this Court were to determine that the conduct of Officer Defendants is conscience-shocking, there are no allegations in Plaintiff's Complaint to attribute that conduct to ASA Defendants, making his Fourteenth Amendment claims insufficient.

Second, Plaintiff alleges that ASA Defendants violated his Fifth Amendment right against self-incrimination by subjecting Plaintiff to a coercive interrogation. Compl. ¶¶146-54. The test to determine the voluntariness of a confession is based on the totality of the circumstances. *Malloy v. Hogan*, 378 U.S. 1, 7 (1964). Some circumstances to consider are: characteristics of the suspect, conditions of the interview, and the conduct of the interrogators. *United States v. Brooks,* 125 F.3d 484, 492 (7th Cir. 1997); *Koh,* 307 F. Supp. 3d, at 850-51. The court must analyze coercion from the perspective of a reasonable person in the position of the suspect being interrogated. *United States v. Huerta,* 239 F.3d 865, 871 (7th Cir. 2001). Here, beyond Plaintiff's ambiguous group-pleading, Plaintiff's Complaint alleges that after Plaintiff was interrogated by police officers, and ASA Defendants arrived to speak to Plaintiff before deciding whether to press charges against him, which was reasonable. Accordingly, Plaintiff has failed to sufficiently allege that ASA Defendants violated his Fifth Amendment right against self-incrimination.

### C.    Count III Should Be Dismissed Because Plaintiff Fails to Sufficiently Allege Claims of Malicious Prosecution and Unlawful Detention.

Regarding Plaintiff's malicious prosecution claims (Count III), in 2022 the Supreme Court recognized the existence of a Fourth Amendment malicious prosecution claim, overruling contrary Seventh Circuit precedent. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). However, the Supreme Court declined to comment on the existence of a malicious prosecution claim pursuant to the Fourteenth Amendment. *Id.* at 1337 n. 2. Since this decision, Courts in the Northern District

of Illinois have explained that *Thompson* "did not overrule Seventh Circuit precedent holding that a plaintiff subject to prosecution under Illinois law cannot bring a Fourteenth Amendment malicious prosecution claim" because Illinois law permits malicious prosecution claims. *Franklin v. Harvey City Detective Rasheed Askew Star #944*, 2022 U.S. Dist. LEXIS 210428, at *18-19 (N.D. Ill. Nov. 21, 2022); *see, e.g.*, *Sneed v. Vill. Of Lynwood*, 2022 U.S. Dist. LEXIS 181434, at *3 (N.D. Ill. Oct. 4, 2022); *Navarro v. City of Aurora*, 2022 U.S. Dist. LEXIS 100424, at *2 (N.D. Ill. June 6, 2022). Plaintiff was prosecuted under Illinois law and he can file a state-law malicious prosecution claim – exhibited by Count VII of his Complaint – so his claim of malicious prosecution under the Fourteenth Amendment should be dismissed.

In Count III, Plaintiff makes two claims under the Fourth Amendment: a malicious prosecution claim and a unlawful detention claim. For Fourth Amendment claims, a plaintiff must show that: (i) the prosecution was instituted without any probable cause; (ii) the motive in instituting the prosecution was "malicious;" and (iii) a favorable termination of the underlying criminal prosecution. *Thompson*, 142 S. Ct. at 1338; *see, also*, *Navarro*, 2022 U.S. Dist. LEXIS 100424, at *5 (noting that the gravamen of a Fourth Amendment claim is the lack of probable cause). The second element of a "malicious" motive is often defined in this context as "without probable cause and for a purpose other than bringing the defendant to justice." *Thompson*, 142 S. Ct. at 1338. "Probable cause does not require certainty," but rather is "a fluid concept that relies on the common-sense judgment" looking at the totality of the circumstances. *Henderson v. Rangel*, 2022 U.S. Dist. LEXIS 154944, at *7 (N.D. Ill. Aug. 26, 2022). Looking at the pleaded facts, the ASA Defendants had no reason to know about the coercive tactics employed by officers during Plaintiff's interrogation, and Plaintiff does not allege that ASA Defendants employed similar tactics. Pursuant to the Complaint, after speaking to Plaintiff, additional suspects, and Plaintiff's

girlfriend, ASA Defendants believed there was sufficient probable cause to file charges against Plaintiff. Accordingly, beyond conclusory language, Plaintiff does not sufficiently allege that ASA Defendants violated his Fourth Amendment rights.

Accordingly, the only claim in Count III that remains is an unlawful detention claim pursuant to the Fourteenth Amendment. However, such claims may proceed under § 1983 as a violation of the Fourth Amendment, but not the Fourteenth Amendment's Due Process Clause. *Moore v. City of Chicago*, 2020 U.S. Dist. LEXIS 101340, *9 (*citing Lewis v. Chicago*, 914 F.3d 472, 479 (7th Cir. 2019)). Indeed, since the ruling in *McDonough v. Smith*, 139 S.Ct. 2149 (2019), courts in this District have declined to dismiss a Fourteenth Amendment claim when a Fourth Amendment claim would persist because discovery would be coextensive for both claims. *See, e.g.*, *Mack v. City of Chicago*, 19 C 4001, 2020 U.S. Dist. LEXIS 222457, at *3 (N.D. Ill. Nov. 30, 2020) (Pallmeyer, J.); *Culp v. Flores*, 454 F.Supp.3d 764, 770 (N.D. Ill. Apr. 15, 2020) (Feinerman, J.); *Treadwell v. Chi. Police Officers David*, 2021 U.S. Dist. LEXIS 137647, at *9 (N.D. Ill. July 23, 2021). However, as stated, no viable Fourth Amendment claims exist. Therefore, Plaintiff's attempts to group-plead multiple claims under multiple constitutional authority should not stand, and his claim of unlawful detention under the Fourteenth Amendment should be dismissed.

For the foregoing reasons, Plaintiff's Complaint does not contain sufficient allegations to state a viable claim of either malicious prosecution or unlawful detention pursuant to either the Fourth or Fourteenth Amendments against ASA Defendants. Accordingly, Count III against ASA Defendants should be dismissed.

**D.      Count IV Should Be Dismissed Because Plaintiff Has Failed to State a Valid Claim for Failure to Intervene.**

For Plaintiff's failure to intervene claim, "the police are not obligated to adhere to the suggestions of the state's attorney's office, a separate and distinct organization with no command authority over the Chicago Police Department." *Anderson v. Simon*, 217 F.3d 472, 476 (7th Cir. 2000); *see, also*, *Andrews*, 660 F. Supp. 2d at 876 n. 6. "Prosecutors called to police stations to memorialize a confession lack not only the legal authority to direct or limit law enforcement officers in their investigations, but also any practical means by which they can effectively intervene." *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1055 (N.D. Ill. 2016).

Here, ASA Defendants had no duty to intervene in any misconduct on behalf of Officer Defendants because the offices of ASA Defendants and Officer Defendants are separate entities, and ASA Defendants did not have command authority over Officer Defendants. Moreover, even assuming ASA Defendants had such a duty to intervene, dismissal of a failure to intervene claim is proper when the plaintiff does not allege facts that the pertinent defendants had reason to know a constitutional violation was being committed. *See Roehl v. Merrilees,* No. 11 C 4886, 2012 U.S. Dist. LEXIS 50253, at *24 (N.D. Ill. 2012); *see, also*, *Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 477 (N.D. Ill. 1997). Here, Plaintiff's failure to intervene claim consists of insufficient labels and conclusions, and therefore should be dismissed.

**III.     SHOULD THIS COURT DETERMINE THAT ASA DEFENDANTS' CONDUCT IS NOT PROTECTED BY ABSOLUTE IMMUNITY, THEIR CONDUCT WAS REASONABLE AND IS THUS PROTECTED BY QUALIFIED IMMUNITY.**

Prosecutors may enjoy qualified immunity even if their actions do not fall under the absolute immunity umbrella. *Serrano v. Guevara,* 315 F. Supp. 3d 1026, 1034 (N.D. Ill. 2018); *Buckley,* 509 U.S. at 273. Like absolute immunity, the qualified immunity inquiry should also be resolved as soon as possible as it is immunity from suit. *Pearson,* 555 U.S. at 232. The qualified

immunity inquiry is two-fold: whether the facts alleged set forth a violation of a constitutional right, and whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232-236 (*citing Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). This inquiry turns on the objective legal reasonableness of the action and is assessed considering the legal rules that were clearly established at the time. *Pearson,* 555 U.S. at 243-44 (*citing Wilson v. Layne,* 536 U.S. 603, 614 (1999) (internal quotation marks omitted)). The court must evaluate whether it would have been clear at the time to a reasonable person in that position that his actions were unlawful, or "in other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards,* 556 U.S. 658, 664 (2012); *Koh,* 2013 U.S. Dist. LEXIS 136341, *37.

Outside of conclusory language and ambiguous group-pleading, Plaintiff does not allege that ASA Defendants knew about the coercive tactics employed by the officers or that ASA Defendants knew that the witness statements were false or a product of coercion. In other words, after a five-week long investigation, ASA Defendants merely spoke to witnesses after they made statements to police officers, which is not a violation of a clearly established right. Therefore, ASA Defendants at all times acted reasonably and are protected by qualified immunity.

Specifically for Plaintiff's failure to intervene claim, before 2012, there was not a clearly established right that a prosecutor must intervene. *See Serrano,* 315 F. Supp. at 1038-39 39; *see, also*, *Harris,* 330 F.R.D. at 516, n.8. To date, the Seventh Circuit has not explicitly recognized a failure to intervene claim against a prosecutor, although courts in this District are split on the issue. *Cf., e.g., Patrick*, 213 F. Supp. 3d at 1055 (declining to expand the law to recognize a failure to intervene claim to prosecutors) and *Andrews*, 660 F. Supp. 2d at 876 n.6 (same) with *Rodney Harris v. City of Chicago*, No. 15 CV 3859, 2015 WL 5445012, *3-4 (N.D. Ill. Sept. 15, 2015)

(denying motion to dismiss plaintiff's failure to intervene claim against prosecutors) and *Saunders v. City of Chicago*, No. 12 CV 09158, 2013 WL 6009933, *10 (N.D. Ill. 2013) (same). While even today there is a split in this District on the duty for a prosecutor to intervene in police misconduct, there was no clearly established right in 1999 for ASA Defendants to intervene in alleged misconduct of Officer Defendants. *See Bianchi v. McQueen*, 818 F. 3d 309, 323 (7th Cir. 2016) (qualified immunity applied where the law was unsettled). Therefore, ASA Defendants are entitled to qualified immunity.

## IV.   WITH NO VIABLE FEDERAL LAW CLAIMS, PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

With no viable claims under federal law, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims against ASA Defendants.[4] Compl. ¶¶186-98. This Court's exercise of jurisdiction over state claims is an exercise of supplemental jurisdiction. 28 U.S.C. §1367(c)(3). District courts may decline to exercise supplemental jurisdiction over a claim if it has dismissed the claim over which it has original jurisdiction. *See* 28 U.S.C. §1367(c)(3); *see, also*, *Arsberry v. Illinois*, 244 F.3d 558, 567 (7th Cir. 2001). As stated, Plaintiff's § 1983 claims should be dismissed, and ASA Defendants respectfully request this Court not to exercise supplemental jurisdiction over Plaintiff's state-law claims; but should this Court decide to do so, the conduct of ASA Defendants' is protected by absolute immunity under Illinois law. *See, e.g., White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006) (noting that Illinois courts have mirrored the pronouncement of absolute immunity in *Imbler*). Therefore, absolute immunity extends to ASA Defendants' conduct for Plaintiff's state law claims, which should be dismissed.

---

[4] Count VII (malicious prosecution), Count VIII (IIED), and Count IX (willful and wanton conduct).

## V.    IF THIS COURT DETERMINES NOT TO DISMISS PLAINTIFF'S CLAIMS, PLAINTIFF SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITIVE STATEMENT OF HIS CLAIMS.

If this Court decides not to dismiss Plaintiff's claims against ASA Defendants, ASA Defendants respectfully respect this Court to require Plaintiff to provide a more definitive statement of his claims pursuant to Rule 12(e) so that ASA Defendants can properly respond to Plaintiff's Complaint. Fed R. Civ. P. 12(e). As stated in Section II-A above, Plaintiff repeatedly refers to the ambiguous collective "Defendants" in his Complaint. "This kind of [group] pleading is indeed inadequate, because it provides no clues as to whether, for the particular conduct described, plaintiff[ asserts] that each and every one of the defendants engaged in that conduct . . . or whether plaintiff[] instead contend[s] that only some of the defendants, or possibly even none of them, performed a given act." *Atkins v. Hasan*, 2015 U.S. Dist. LEXIS 80176, at *8-9 (N.D. Ill. 2015). Although the Federal Rules permit a plaintiff leeway in the pleading stage, the policy behind such leeway is that there is an information imbalance between the parties at the pleading stage. *Perkins v. Wexford Health Sources, Inc.*, No. 15 C 6188, 2019 U.S. Dist. LEXIS 29227, at *7 (N.D. Ill. Feb. 25, 2019) (citing *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005)). Due to the decades of Plaintiff's previous legal proceedings and the discovery such litigations entails, there is no practical information imbalance between the parties.

The evidence in this case *is* in the hands of the Plaintiff and has been for years. As a result, Plaintiff was able to plead distinctions between "Police Officer Defendants" and "Prosecutor Defendants." Compl. ¶¶21, 24. Yet, on multiple occasions Plaintiff weaves between naming specific groups of defendants and using the ambiguous "Defendants" throughout his Complaint.[5]

---

[5] Plaintiff alleges that "Police" went to arrest Plaintiff at his home, but then states that "Defendants" brought Plaintiff to the Area Five police station. *Id.* at ¶¶41-42. Plaintiff lays out a series of allegations regarding physical abuse/coercion by officers, but ambiguously uses "Defendants" although there are no allegations to support that ASA

20

Plaintiff repeatedly includes ASA Defendants in allegations involving the Chicago Police Department, so far as to even claim that ASA Defendants were police officers.[6] Plaintiff even includes ASA Defendants in his *Monell* claim against the City of Chicago.[7] Plaintiff does not name ASA Defendants in his state-law conspiracy claim, yet claims that other torts were accomplished through the ambiguous "Defendants' conspiracy." Compl. ¶¶200-04. Perhaps most importantly, Plaintiff's Fourteenth Amendment Due Process claim begins and ends by discussing the misconduct of Officer Defendants, ending the claim stating that the misconduct was pursuant to the policies and practice of the City of Chicago and the Chicago Police Department. *Id.* at ¶¶134-38, 141, 143-45. However, without naming "ASA Defendants" collectively or individually, Plaintiff uses the ambiguous collective "Defendants" three times. *Id.* at ¶¶139-40, 142.

At worst, Plaintiff misleads the reader of his Complaint to incorrectly include ASA Defendants in the actions of other Defendants; at best, Plaintiff's lackluster pleading leaves ASA Defendants to wonder which of many allegations are asserted against them in order to properly respond to them. *See Atkins*, 2015 U.S. Dist. LEXIS 80176, at *8-9. Therefore, should this Court not dismiss Plaintiff's claims against ASA Defendants in their entirety, ASA Defendants request

---

Defendants were present with Plaintiff at those times. *Id.* at ¶¶42-52. Plaintiff makes a distinction that Defendant Hood participated in taking Kwil's statement and Defendant McGuire participated in taking Ruben's statement, but also alleges that "Defendants obtained false confessions from [Kwil] and Ruben." *Id.* at ¶¶58, 67. Plaintiff states that Defendants Guevara and Halvorsen arrested and interrogated Miller, but states that she made her statement within twenty minutes of being picked up by "Defendants." *Id.* at ¶70. Plaintiff alleges that Defendant McGuire participated personally in fabricating Miller's statement, but states that "Defendants" threatened and pressured her and that her statement was "manufactured by Defendants." *Id.* at ¶¶73-76.

[6] On multiple occasions, Plaintiff references members of the Police Department and includes ASA Defendants. *See* Compl. ¶¶99-101, 113. Plaintiff goes as far to allege that the City "failed to supervise or discipline its *police officers*, including Defendants Guevara and the other *Defendants*." *Id.* at ¶133 (*emphasis added*). Plaintiff alleges that Cook County was the employer of Prosecutor Defendants, but alleges that the "City of Chicago … is or was the employer of the above-named *Officer Defendants*" and that "[e]ach of the *individual defendants* named in this complaint acted … as agents or employees of the City of Chicago." *Id.* at ¶¶24-25 (*emphasis added*). *See, also, id.* at ¶¶167-73 (Count V) (where Plaintiff mentions Officer Defendants, the City of Chicago, and the Chicago Police Department throughout, but uses "these Defendants" in Paragraph 172).

[7] In the *Monell* claim, Plaintiff names Police Officer Defendants, the Chicago Police Department, and the City of Chicago throughout (*see id.* at ¶¶174-85), but switches to using "Defendants" on two occasions. *Id.* at ¶¶177, 185.

this Court to order Plaintiff to amend his Complaint to provide a more definitive statement of his claims so ASA Defendants can properly respond to them.

## CONCLUSION

Wherefore, based on the foregoing reasons, ASA Defendants respectfully request that this Court to: (1) dismiss Plaintiff's claims against ASA Defendants in their entirety; (2) or, alternatively, require Plaintiff to amend his Complaint and provide a more definitive statement; and (3) any other relief this Court deems proper.

Respectfully submitted,

*/s/ Michael J. Czopkiewicz*
Attorney for ASA Defendants,
    Hon. Michael J. Hood,
    Brendan McGuire

Michael J. Czopkiewicz
Sean O'Callaghan
O'Mara & O'Callaghan, LLC
230 W. Monroe, Suite 2620
Chicago, IL 60606
Phone: (312) 600-5588
michael.c@O2lawyers.com
Sean.OCallaghan@O2lawyers.com

**CERTIFICATE OF SERVICE**

I, Michael J. Czopkiewicz, an attorney, hereby certify that I caused the above **Defendants Hood's and McGuire's Motion to Dismiss Plaintiff's Complaint, or, Alternatively, for a More Definitive Statement** to be served on all counsel of record via ECF Filing on July 31, 2023.

By: /s/   *Michael J. Czopkiewicz*
*Attorney for Defendants Hood and McGuire*