IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GECHT, | ) |
| | ) |
| | ) Case No. 23-cv-01742 |
| Plaintiff, | ) |
| | ) Hon. Lindsay C. Jenkins |
| v. | ) United States District Judge |
| | ) Magistrate Hon. Heather K. McShain |
| REYNALDO GUEVARA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **REPLY IN SUPPORT OF FINDING OF GOOD FAITH SETTLEMENT**

Plaintiff DAVID GECHT and Defendant COOK COUNTY (collectively, the "Settling Parties"), by their undersigned attorneys, respectfully submit the following reply in support of their Motion for Finding of Good Faith Settlement.

**I.    Factual and Procedural Background**

David Gecht filed this civil rights lawsuit seeking restitution for his alleged wrongful incarceration. He is one of dozens of exonerees who have filed wrongful conviction cases against Cook County and the City of Chicago. Many of these cases involve former Chicago Police Detective Reynaldo Guevara and associated police officers. Loevy + Loevy represents a number of these plaintiffs. And because many of these cases involve the same defendants, many of the same defense counsel appear across the cases involving Detective Guevara, too.

After significant litigation, eight of these plaintiffs represented by Loevy + Loevy settled with the Cook County Defendants in their cases—the Cook County felony review Assistant State's Attorneys involved in their cases, and the County itself. The fact patterns of these cases are similar—Detective Guevara and his Chicago Police colleagues are alleged to have extracted

1

confessions and to have fabricated statements from allegedly innocent individuals. Plaintiffs also claim that felony review Assistant State's Attorneys participated in the misconduct. These eight plaintiffs were sentenced to vastly varying lengths of total imprisonment but, as one might, expect they all served roughly the same amount of time in pretrial detention.

In these eight cases, each plaintiff settled with the County Defendants in exchange for $3,000,000 compensation for injuries flowing from their Fourth Amendment malicious prosecution claim—including damages suffered as the result of pretrial incarceration from the time of a judicial finding of probable cause to the start of the Plaintiff's criminal trial—and $100,000 in attorneys' fees and costs spent solely in the pursuit of claims against the County Defendants thus far in the case. Though the monetary amounts and allocation were the same in these eight cases, Plaintiffs' counsel felt that it reasonably valued the amount of time that each victim served in pretrial incarceration while taking into account the unique circumstances that each victim faced in that timeframe. In exchange, the plaintiffs agreed to dismiss their claims against the County Defendants. *See Abrego v. Guevara*, No. 23-cv-1740, ECF 140-1 (N.D. Ill. Oct. 23, 2024); *Bouto v. Guevara*, No. 19-cv-2441, ECF 394-1 (N.D. Ill. Oct. 23, 2024); *Gecht v. Guevara*, No. 23-cv-1742, ECF 178-1 (N.D. Ill. Oct. 23, 2024); *Gonzalez v. Guevara*, No. 23-cv-6496, ECF 208-1 (N.D. Ill. Oct. 23, 2024); *Kelly v. Guevara*, No. 24-cv-5354, ECF 74-1 (N.D. Ill. Nov. 4, 2024); *Kwil v. Guevara*, No. 23-cv-4279, ECF 101-1 (N.D. Ill. Oct. 23, 2024); *Martinez v. Guevara*, No. 23-cv-1741, ECF 198-1 (N.D. Ill. Oct. 23, 2024); *Rodriguez v. Guevara*, No. 22-cv-6141, ECF 210-1 (N.D. Ill. Oct. 23, 2024).

Shortly after reaching his settlement agreement, Gecht filed a Motion for Good Faith Finding. ECF 178. He then filed an amended motion. ECF 181. The individual Officer-Defendants and the City of Chicago (hereinafter "Non-Settling Defendants") filed a Response in

Opposition to Plaintiff's Motion for Good Faith Finding. ECF 190. Gecht now files this Reply Brief in Support of his Motion for a Good Faith Finding.

## II. The settlement agreement is entitled to a good faith finding under the Illinois Joint Tortfeasor Act.

The settlement agreement is a valid contract that provides for consideration on both sides. As such, it is entitled to a presumption of good faith. The Non-Settling Defendants have failed to rebut this presumption because they did not introduce allegations or evidence that undermine the validity of the agreement. Therefore, Plaintiff respectfully asks this Court to find that the settlement agreement was made in good faith.

### A. Legal Standard

The Illinois Joint Tortfeasor Act governs approval of this settlement. *Koh v. Village of Northbrook*, 2020 WL 6681352, at *4 (N.D. Ill. Nov. 12, 2020); *Fox v. Barnes*, 2013 WL 2111816, at *2–4 (N.D. Ill. May 15, 2013). That Act, which embraces the common law doctrine of joint and several liability, provides a right of contribution in favor of tortfeasors who pay claimants more than their pro rata share of liability. 740 ILCS 100/2(a), (b). One of the primary purposes of the Act is thus "the equitable apportionment of damages among tortfeasors." *Roberts v. Alexandria Transportation, Inc.*, 2021 IL 126249 ¶ 54 (2021).

The Act serves a second, equally important purpose: "the encouragement of settlements." *Id.* To that end, the Act discharges tortfeasors from all contributory liability if they settle a claim. 740 ILCS 100/2(d). The Act's only condition for taking advantage of this benefit is that the settlement be reached in "good faith." *In re Guardianship of Babb*, 162 Ill. 2d 153, 161 (1994) (citing 740 ILCS 100/2(c)).

Courts make a good faith finding through a burden-shifting legal framework. The settling parties bear the initial burden of showing that the settlement agreement was reached in

3

good faith. *Antonicelli v. Rodriguez*, 2018 IL 121943 ¶ 24 (2018). This burden is satisfied "with proof of a legally valid settlement agreement." *Id.* "Proof of consideration [has been] held to be prima facie evidence of validity" and therefore creates a "presumption" of good faith. *Johnson v. United Airlines*, 203 Ill. 2d 121, 131 (2003).

If the settling parties meet their initial burden, then the burden shifts to the non-settling parties. The non-settling parties must prove the absence of good faith by "a preponderance of the evidence." *Antonicelli*, 2018 IL 121943 ¶ 24. That showing can be made through proof that the settling defendants engaged in wrongful conduct, collusion, or fraud. *Id.* This is a totality-of-the-circumstances analysis, with courts considering: (1) whether the amount paid by the settling tortfeasor was within the reasonable range of the settlor's fair share; (2) whether there was a close personal relationship between the settling parties; (3) whether the plaintiff sued the settlor; and (4) whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement. *Wreglesworth v. Arctco, Inc.*, 740 N.E.2d 444, 449 (Ill. App. Ct. 2000).

**B. The Settling Parties satisfied their initial burden of showing good faith because the settlement agreement provides for consideration on both sides.**

As discussed in Plaintiff's initial motion, the Settling Parties carried their initial burden by entering into a settlement agreement that provides for consideration on both sides. In exchange for money compensating Plaintiff for his pretrial imprisonment, Plaintiff agrees to give up his claims for damages that flow from his pre-trial incarceration and to dismiss Cook County from this case. This agreement accords with those in other cases that have been found to include valid consideration. *E.g.*, *Johnson v. United Airlines*, 203 Ill.2d 121, 135, 140 (2003) (finding the settling parties "provided a sufficient preliminary showing of good faith" where plaintiffs dismissed claims against certain defendants in exchange for a monetary

4

compensation); *Wreglesworth*, 317 Ill. App. 3d at 634 (same). The Non-Settling Defendants do not contest that this initial burden was discharged.

### C. Defendants have not shown by a preponderance of the evidence that the settlement was not made in good faith.

The Non-Settling Defendants have not carried their burden of showing by a preponderance of the evidence that the Settling Parties' agreement was not made in good faith. The Non-Settling Defendants did not even attempt to dispute three of the factors: the plaintiff obviously sued the settlor in this case, and as substantial litigation between Plaintiff's counsel and the County's counsel can attest to, there is no close personal relationship between the settling parties. Additionally, there was no concealment of the Settlement Agreement given that it was attached to the Motion for Good Faith Finding. *Compare Koh v. Village of Northbrook*, 2020 WL 6681352, at *5 (N.D. Ill. Nov. 12, 2020) (no concealment where the settlement agreement was attached to Motion for Good Faith Finding) *with In re Guardianship of Babb*, 162 Ill.2d 153, 163–66 (1994) (finding that concealment of settlement agreement weighed against good faith finding where the settling parties misrepresented the terms of the settlement agreement to the probate court, and did not serve notice on all the non-settling defendants).

The Non-Settling Defendants argue only that the Settlement Agreement contradicts the Illinois Joint Tortfeasor Act's purpose of apportioning liability properly between defendants. Even if the Police Defendants were correct in this argument, it would not justify finding that the Settlement Agreement was not made in good faith. Every other factor, including the Act's other purpose of encouraging settlements, weighs in favor of a good faith finding. A single contrary factor should not prevent a good faith finding. *Johnson*, 203 Ill. 2d at 139 ("Emphasis should not be placed on any single factor.").

5

The Non-Settling Defendants' argument fails on its merits too. The compensation provided by County Defendants falls within the reasonable range of compensation for Plaintiff's pretrial incarceration. And the Non-Settling Defendants failed to prove by a preponderance of the evidence that the County Defendants are responsible for any portion of the non-settled claims. There are material differences between the settled claims and the non-settled claims, and the Non-Settling Defendants should not be able to prevent a good faith finding by ignoring those distinctions.

**1. The Settlement Agreement provides for financial compensation that falls within the reasonable range for the injuries to which that compensation is allocated.**

d

Even though Gecht's per-year compensation is on the high end of the spectrum, it still falls within the wide range of per-year damages awarded in other similar cases, as demonstrated by the table in Appendix 1. The Illinois Supreme Court has emphasized that courts need not make "a precise determination of the overall damages suffered by the plaintiff and the settling tortfeasor's proportionate liability." *Johnson*, 203 Ill. 2d at 139–40. In fact, Illinois courts have rejected fine-grained tests designed to parse out exact liability amounts. *Id.* (citing *McDermott v. Metropolitan Sanitary Dist.*, 240 Ill. App. 3d 1, 46 (1992), as an example of a court rejecting tests that would precisely compare settlement amounts to proportional liability or eventual jury awards). Rather, Illinois courts ask at a more general level whether a settlement amount falls "within a reasonable range of the settlor's fair share" of liability. *Wreglesworth*, 317 Ill. App. 3d at 634 (quoting *Babb*, 162 Ill. 2d at 161). The settlement amount in this case falls within the reasonable range of comparable awards on a per-year basis, and therefore weighs in favor of a good faith finding.

The Illinois Supreme Court has also rejected the Non-Settling Defendants' argument that matching settlement amounts between different plaintiffs indicates bad faith. In *Johnson v. United Airlines*, a plane crash killed ten passengers and two crew members aboard a United Airlines flight. 203 Ill. 2d at 124. The estates of the decedent-passengers brought wrongful death actions against the airline and other defendants, including defendant City of Quincy. Eight of the passengers' estates settled the City of Quincy for $1,000 each. *Id.* at 125–26. Without inquiring into the precise future earnings that each of these eight plaintiffs would have earned—as courts frequently do in wrongful death actions, *e.g.*, *Exchange Nat'l Bank of Chicago v. Air Illinois, Inc.*, 167 Ill. App. 3d 1081, 1086 (1988) (holding that future earnings could be considered in determining damages for the estate of a passenger who died in a plane crash)—the Illinois Supreme Court found that the $1,000 settlement for each plaintiff was made in good faith because the non-settling defendants did not introduce any evidence showing that the settlement was produced through wrongful conduct, collusion, or fraud. *Johnson*, 203 Ill. 2d at 138. Here, too, the Non-Settling Defendants lament the Settlement Agreement but have not introduced evidence suggesting that it was anything but an arms-length negotiation between parties that are litigating multiple cases against each other at the same time.

2. **The Non-Settling Defendants have not carried their burden in showing that the Settlement Agreement improperly apportions liability.**

The Non-Settling Defendants argue that the Settlement Agreement was not made in good faith because it does not properly apportion liability between them and the County Defendants. ECF 161 at 7–11. They assert that the Defendant-Prosecutors Maguire and Hood (hereinafter "Defendant-Prosecutors") are liable for some portion of Plaintiff's post-conviction injuries. However, in their brief, the Non-Settling Defendants did not allege their own facts or introduce evidence showing that the Prosecutor-Defendant would necessarily be liable for post-

7

conviction injuries. Because the Non-Settling Defendants bear the burden of proving an absence of good faith by a preponderance of the evidence, *Antonicelli*, 2018 IL 121943 ¶ 24, the lack of evidence undercuts the Non-Settling Defendants' arguments.

The lack of evidence alone is enough to reject the Non-Settling Defendants' arguments. *See, e.g.*, *Fox v. Barnes*, 2013 WL 2111816, at *10 (rejecting defendant's argument that a settlement was not made in good faith because the defendant did present evidence showing that the allocation of damages was inappropriate). The Illinois Supreme Court has rejected similar challenges that are premised on unsubstantiated allegations of unfair apportionment. *Johnson v. United Airlines*, 203 Ill. 2d 121 (2003), provides a good example. The City of Quincy had argued that it was absolutely immune from liability pursuant to another state law. *Id.* at 125. Nevertheless, Quincy settled for $1,000 to "avoid the time and expense of additional litigation." *Id.* at 135. Another co-defendant, Raytheon Aircraft Company, argued that the settlement agreement was not made in good faith because $1,000 did not reflect Quincy's relative culpability. *Id.* at 139. Raytheon sought an evidentiary hearing to prove its argument. But the Illinois Supreme Court rejected Raytheon's argument that Quincy's settlement did not reflect its true culpability and held that the trial court did not abuse its discretion in denying Raytheon's request for an evidentiary hearing, because Raytheon "made no offer of proof" as to how it could show that Quincy bore a greater share of liability. *Id.* at 140. Similarly, in this case, the Non-Settling Defendants argue that County Defendants are liable for Plaintiff's post-conviction injuries but have not produced evidence supporting that assertion. Without evidence, the Non-Settling Defendants have failed to carry their burden.

The lack of evidence also differentiates this case from *Koh v. Village of Northbrook*, 2020 WL 6681352 (N.D. Ill. Nov. 12, 2020). In *Koh*, police officers unlawfully arrested Mr.

Hyung Seok Koh and held him in pretrial detention for nearly four years before he was acquitted in a jury trial. 2020 WL 6681352, at *1–3. Mr. Koh and his wife, Mrs. Eunsook Koh, sued the police officers and other defendants responsible for his unlawful detention. The Koh's settled with a subset of the police officer defendants, agreeing to dismiss all claims against the settling defendants in exchange for $3,950,000. *Id.* at *4. The majority of this settlement amount ($3,300,000) was allocated to compensating Mrs. Koh for loss of consortium, while $100,000 was devoted to Mr. Koh's Fourth Amendment claims, and another $100,000 was apportioned to Mrs. Koh's Fourth Amendment claims. *Id.*

The district court initially held that the settlement was not made in good faith and required a re-allocation of the damages before it ultimately approved the settlement, but it relied on reasoning that is inapplicable to this case. In *Koh*, the district court decided a summary judgment motion before deciding the plaintiff's motion for good faith finding. *See Koh v. Graf*, 305 F. Supp. 3d 827 (N.D. Ill. 2018) (summary judgment decision). Thus, in determining that the settlement failed to appropriately distribute liability among defendants, the district court relied on evidence that had been presented in summary judgment briefing. *Koh*, 2020 WL 6681352, at *6–7 (recounting evidence and citing summary judgment decision for evidentiary support). In this case, however, the Non-Settling Defendants have failed to present any evidence supporting their arguments.

The Non-Settling Defendants' argument also ignores differences between the settled claims and the non-settled claims. For one thing, Plaintiff's Fourth Amendment claim is distinct from his state-law malicious prosecution claim. The Fourth Amendment claim—which Plaintiff is settling—provides a remedy only for detention without probable cause in the pretrial period. *See Manuel v. City of Joliet*, 580 U.S. 357 (2017). Plaintiff's state-law claim for malicious

9

prosecution, on the other hand, addresses the commencement and continuation of a criminal case without probable cause from beginning to end, without any consideration of imprisonment or detention. These two claims should not be treated synonymously because they serve different injuries.

Additionally, Plaintiff's complaint reflects the limited role that the Defendant-Prosecutors allegedly played in this case. Plaintiff does not allege that the Defendant-Prosecutors fabricated or suppressed evidence in violation of due process (Claim 1); he does not allege that the Defendant-Prosecutors participated in the conspiracy to deprive him of his constitutional and state-law rights (Counts V and X); and he does not allege that the Defendant-Prosecutors played a role in developing the policies and practices that deprived him of his constitutional rights (Count VI). The Non-Settling Defendants—Chicago police officers and the City of Chicago—are the sole defendants implicated by those claims. Thus, they shoulder the entirety of liability for those claims.

As these claims show, the Non-Settling Defendants are the main defendants. It is entirely reasonable to conclude, based on the allegations in the complaint, that the Defendant-Prosecutor's role in the case was to help obtain a reported false confession from the suspect, which was used to secure criminal charges against the Plaintiff and incarcerate him before trial. After all, that is the role of a felony review prosecutor—by all accounts—in Cook County. It is correspondingly reasonable to conclude, based on the allegation in the complaint, that the Defendant-Officers were the principal architects of the plot to secure a false confession and the ones who fabricated the confession itself. Moreover, as alleged in Plaintiff's Complaint, the police defendants were the *sole defendants* involved in fabricating other items of evidence, suppressing exculpatory and impeachment evidence, and conducting suggestive identification

procedures, which led to a whole host of due process violations, deprived Plaintiff of a fair criminal trial, and caused his wrongful conviction. The Defendant-Prosecutors had nothing to do with that misconduct at all. If the Non-Settling Defendants wanted to prove that the Prosecutor-Defendant had greater involvement in Plaintiff's wrongful conviction than what the complaint alleges and what the settlement compensation allocation contemplates, then the Non-Settling Defendants had to prove their argument by a preponderance of the evidence. They failed to do so.

   3. **Unsubstantiated apportionment arguments should not deter courts from fulfilling the Illinois Joint Tortfeasor Act's other purpose of encouraging settlements.**

Contrary to the Non-Settling Defendants' arguments, the Illinois Joint Tortfeasor Act's second purpose—the encouragement of settlements—is equally important to determining whether the Settlement Agreement was reached in good faith. This purpose admonishes courts to not prevent parties from settling cases as they see fit unless the parties engage in wrongful conduct, collusion, or fraud. *Antonicelli*, ¶ 23. The Non-Settling Defendants do not allege that the Settlement Agreement here was the product of any illicit activity.

If a non-settling party fails to carry their burden in proving that a settlement improperly apportions liability (as the Non-Settling Parties failed to do here), a court should not step in to fill that void by making factual assumptions about the proper division of liability. Such speculation would impair parties' ability to bargain effectively during settlement negotiations because a party might be inclined to settle a case for many other reasons besides their own liability. For instance, a non-liable defendant might choose to settle a case instead of proceeding to trial in order to avoid the risk of a massive jury award, stop the mounting liability of attorneys' fees, or to put an end to vexatious tasks that come with being a party to litigation. *See, e.g.*, *Johnson*, 203 Ill. 2d at 135. In these circumstances, settlement is simply a cost-benefit

11

analysis: is the cost of settling a case worth the benefit of putting an end to litigation and avoiding the risk of a greater damages award at trial?

Under the Illinois Joint Tortfeasor Act, courts cannot assume that a defendant who settles a case is liable for any portion of the remaining claims without evidence that proves their liability by a preponderance of the evidence. Guessing at potential liability without evidence would intrude upon the bargaining that happens in settlement negotiations, and thereby impede parties from settling. This action would contravene the Illinois Joint Tortfeasor Act's purpose of encouraging settlement. Because the Non-Settling Defendants have failed to show by a preponderance of the evidence that the County Defendants are liable for a share of post-conviction injuries, the Settlement Agreement is entitled to a good faith finding.

## CONCLUSION

For the foregoing reasons, Gecht respectfully requests this Court to grant his Motion for Good Faith Finding.

DATED: December 12, 2024

Respectfully submitted,

/s/ *Justin Hill*
*Counsel for Plaintiff Gecht*

/s/ *Lyle K. Henretty*
*Counsel for County Defendants*

Jon Loevy
Anand Swaminathan
Steven Art
Justin Hill
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
hill@loevy.com

Lyle K. Henretty
Civil Actions Bureau
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-3116
lyle.henretty@cookcountysao.org