UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUBEN HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, ET AL.,<br><br>Defendants. | No. 23 CV 15375<br><br>District Judge Jenkins<br><br>Magistrate Judge McShain |

**ORDER**

Pending before the Court is the defendants' joint motion to compel Ruben Hernandez to produce improperly withheld documents [237, 238].[1] Plaintiff opposes the motion. [261]. For the following reasons, the motion is granted in part and denied in part.

**Background**

This is a civil-rights and wrongful-conviction case in which Hernandez alleges that defendants conspired to fabricate evidence that he murdered Roberto Cruz. Hernandez also alleges that defendants violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence, including evidence that defendants "had manufactured false identifications" implicating him in the murder. [83] at ¶ 147. Hernandez was convicted of the murder in 2000 and sentenced to sixty years' imprisonment, but his conviction was reversed in 2023. Hernandez's case is consolidated with the cases of David Gecht and Richard Kwil, who were also convicted of Cruz's murder and were likewise subsequently exonerated, for purposes of discovery.

At issue in the pending motion are three categories of evidence and discovery requests over which Hernandez has asserted the attorney-client privilege and/or work-product protection. The first category comprises three letters that Hernandez wrote to Anand Swaminathan, an attorney who represents Gecht and Kwil in their pending civil suits. The second discovery request, closely related to the first category, is defendant Reynaldo Guevara's Interrogatory 19, which asked Hernandez to identify all communications he has had with Swaminathan. The final category

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

comprises twenty-three notes, letters, and research items prepared by Hernandez's attorney in his criminal trial, Mark Solock.

## Legal Standard

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021). "[T]he resolution of discovery disputes is committed to the Court's extremely broad discretion." *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018).

## Discussion

### I. Letters to Swaminathan and Interrogatory 19

While he was incarcerated, Hernandez wrote three letters to Anand Swaminathan, an attorney with the law firm Loevy & Loevy. The letters, which are dated October 3, 2019; November 16, 2019; and January 12, 2020, generally concern Hernandez's efforts to undo his conviction. *See* [238-2]; [238-3]; [238-4].

During discovery in this case, these letters were produced in response to two separate subpoenas. Defendants issued subpoenas for documents to Jennifer Blagg, an attorney who represented Gecht and Kwil in their state postconviction proceedings, and the Exoneration Project, a team of attorneys who also represented Gecht and Kwil. The Exoneration Project made a responsive production on November 30, 2023, that included Hernandez's letters. *See* [237-4] (email from attorney Johsua Tepfer containing Exoneration Project's document production and privilege log). Notably, this production occurred before the District Judge, on December 18, 2023, consolidated Hernandez's case with that of Gecht and Kwil. *See* [122]. Blagg made her responsive production, which also included the letters, on February 16, 2024. *See* [237-1] (email from Blagg containing document production and privilege log). Because this production occurred after the consolidation order was entered, these documents were produced to Hernandez–whose lead attorney in this case, Dan Stohr, was copied on Blagg's email. *See* [*id.*]. On September 10, 2024, after Hernandez retained a second law firm to represent him, that firm asked that defendants reproduce to it all records that had been produced to date, including the documents defendants had received in response to their subpoenas. [237] 7. Defendants did so two weeks later. [237-2] 16.

Defendants argue that Hernandez's letters to Swaminathan are not privileged because (1) no formal or implied attorney-client relationship existed between

2

Hernandez and Swaminathan; and (2) even if an attorney-client relationship had existed, the privilege was waived when the letters were produced (a) to Blagg, who never represented Hernandez, and (b) during this litigation. [237] 11-16. Hernandez responds that the letters are privileged because, when he sent them to Swaminathan, he had a reasonable belief that Swaminathan was his attorney. [261] 3. Hernandez also contends that the disclosures by the Exoneration Project and Blagg could not have waived the privilege because these third parties had no authority to waive the privilege. [*Id.*] 4-5.

The Court concludes that the letters are not privileged. To begin, there is no dispute that Swaminathan never represented Hernandez in any capacity. Moreover, Hernandez's belief that Swaminathan was his attorney was unreasonable.[2]

"An implied attorney-client relationship may be demonstrated in the absence of an express agreement if a party shows (1) that it submitted confidential information to a lawyer, and (2) it did so with the reasonable belief that the lawyer was acting as the party's attorney." *Black Rush Mining, LLC v. Black Panther Mining*, 840 F. Supp. 2d 1085, 1090 (N.D. Ill. 2012). "[A]n implied attorney-client relationship exists only if the client's subjective beliefs are reasonable." *Domanus v. Lewicki*, No. 08 C 4922, 2012 WL 6568227, at *5 (N.D. Ill. Dec. 14, 2012).

Here, the substance of Hernandez's letters demonstrates that Hernandez knew–even before he sent the first letter to Swaminathan–that Swaminathan was not his attorney and that Swaminathan could not represent him because of a conflict of interest. In the January 2020 letter, Hernandez wrote that when he "first met" Swaminathan during a prison visit, Hernandez asked him "for your help with my case and your representation from the exoneration project," but Swaminathan had "assigned me attorney Daniel Stohr to help me and represent me in my own case because you [*i.e.*, Swaminathan] could not represent me due to a conflict of interest." [238-4] 2. Likewise, in the October 2019 letter, Hernandez acknowledged that he spoke to Swaminathan by telephone on September 19, 2019, at which time Swaminathan "informed me that you found and asked attorney Daniel Stohr to take my case and help me." [238-2] 2. Despite defendants' heavy reliance on this evidence, Hernandez's response brief does not address it at all or explain how Hernandez, having been told by Swaminathan himself that Swaminathan could not represent him, could reasonably have believed Swaminathan was in fact representing him. *See* [261] 3. Based on the content of these letters, the Court finds that Hernandez knew before he sent Swaminathan the three letters at issue that Swaminathan could not represent him. For that reason, it was unreasonable for Hernandez to believe that Swaminathan was somehow acting as his attorney, and thus no implied attorney-

---

[2] Hernandez submitted an affidavit stating that, "[w]hen I sent Mr. Swaminathan my papers, I believed that there was an attorney-client confidential privilege between he and I." [261-1] at ¶ 6.

3

client relationship was formed. Because the letters are not privileged, the Court grants the motion to compel as to Hernandez's letters to Swaminathan.[3]

For the same reasons, the Court also grants defendants' motion to the extent it seeks to compel Hernandez to respond to Guevara's Interrogatory 19. That interrogatory asked plaintiff whether he had ever communicated with Swaminathan and, if so, to identify the date of every such communication, what was discussed, how the communication had taken place, and the basis for claiming that any such communications were privileged. *See* [237-4] 47. Hernandez responded that he had communicated with Swaminathan in February or March 2019, but that this communication was protected by the attorney-client privilege. [*Id.*] 48. Given the Court's rejection of the privilege claim, Hernandez must serve an amended response to this interrogatory.

## II. Solock's Documents

Defendants also seek the production of 23 documents contained in the file of Mark Solock, Hernandez's trial attorney. [237] 16-19. Hernandez has asserted that these documents are protected by the attorney-client privilege, the work-product doctrine, or both. [237-4] 2-4 (Hernandez's July 11, 2025, Amended Privilege Log). Defendants dispute the privilege claims, contending that (1) the privilege log does not adequately describe the substance of the withheld documents, such that defendants cannot evaluate the merits of the privilege claims; (2) four of the documents on the log have already been produced to third parties, thus waiving the privilege; (3) at his deposition in this case, Solock testified to the substance of certain conversations he had with Hernandez, thereby waiving the privilege as to that subject matter; and (4) Hernandez implicitly waived the attorney-client privilege by bringing a *Brady* claim.

### A. Adequacy of the Privilege Log

Rule 26 provides that a party withholding information otherwise discoverable on privilege grounds must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). A privilege log must provide the following information for each document at issue: "the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4745385, at *3 (N.D. Ill. Oct. 12, 2021) (internal quotation marks and brackets omitted). "[T]he task of describing the basis for the privilege with sufficient detail yet without disclosing what the legal advice actually was can be

---

[3] Given this ruling, the Court need not address defendants' other arguments why the letters are not privileged.

4

difficult," but "descriptions that are too vague and generic will not suffice." *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *6 (N.D. Ill. Apr. 16, 2021) (internal quotation marks and citations omitted). "To satisfy the requirements of Rule 26(b)(5)(A), the privilege log must at least describe the subject matter to which the legal advice was directed." *St. Paul Guardian Ins. Co.*, 2021 WL 4745385, at *3 (internal quotation marks omitted).

### 1. Hernandez Waived Privilege over Entries 7-18 and 20-23.

Entries 7-18 and 20-23 reflect that 16 documents labeled as "corr to Ruben Hernandzez" have been withheld as privileged and protected by the work-product doctrine. *See* [237-4] 2-3. "Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *Villas at Winding Ridge v. State Farm Fire & Cas. Ins. Co.*, No. 1:16-cv-3301-TWP-MJD, 2018 WL 10246984, at *2 (S.D. Ind. Mar. 16, 2018). Here, however, the log does not identify the subject matter of the correspondence, nor does it contain any information that would permit the Court to determine whether the correspondence contains legal advice or would reveal client confidences. Without this information, it is also impossible to assess the work-product claim. Accordingly, the Court finds that the privilege log is deficient.

In the exercise of its broad discretion to resolve this discovery dispute, the Court concludes that Hernandez's failure to provide a sufficient privilege log should result in a waiver of the attorney-client privilege and work-product protection. The Court recognizes that "ordering the production of potentially privileged documents is a serious sanction" that is "appropriate 'only if the party that authored the log has displayed willfulness, bad faith or fault.'" *Winding Ridge*, 2018 WL 10246984, at *2 (quoting *Muro v. Target Corp.*, 250 F.R.D. 350, 365 (N.D. Ill. 2007)). For purposes of that rule, fault "describes the reasonableness of the conduct–or lack thereof–which eventually culminated in the violation." *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2013 WL 4598490, at *9 (N.D. Ill. Aug. 29, 2013). For two basic reasons, the Court concludes that Hernadez has displayed "fault" respecting the privilege log, thus meriting the imposition of sanctions. First, defendants' motion establishes–without any attempt at contradiction by Hernandez's response brief–that the defense has been seeking an adequate privilege log from Hernandez since May 2025, but Hernandez has repeatedly failed to correct the very deficiency that is leading the Court to grant the motion to compel: the absence of information that would allow the defense to evaluate whether Solock's correspondence with Hernandez is privileged. Hernandez's first privilege log, produced on May 21, 2025, *see* [237] 9, identified 13 letters from Solock to Hernandez, but it contains no information that defendants could have used to evaluate the privilege claim. *See* [237-2] 52. Defense counsel immediately wrote to Hernandez's counsel, citing multiple deficiencies and requesting that Hernandez revise the log. [237-3] 2 (defense counsel's email to Hernandez's counsel, dated May 21, 2025). Hernandez served a revised log on May

5

23, *see* [237] 9, but this log, too, omitted any description of the substance of Solock's correspondence with Hernandez. *See* [237-3] 8. The parties then held two meet-and-confer sessions, the upshot of which was that Hernandez's counsel agreed to provide a revised privilege log by June 9. *See* [237] 9; [237-3] 27 (email from plaintiff's counsel to defense counsel, dated June 6, 2025). This revised log, however, was not produced until nearly a month later, but still it contained no further description of Solock and Hernandez's correspondence. *See* [237-3] 39-41. Hernandez's counsel made a final round of revisions to the privilege on July 11 [237] 10, and this is the version of the log that is before the Court. As discussed above, this log lacks the same basic information that is required by Rule 26 but is missing from Hernandez's original privilege log.

Second, and underscoring the Court's concerns with Hernandez's failure to address the log's obvious deficiencies during the meet-and-confer process, Hernandez has completely failed to address the adequacy of the log in his response brief. *See* [261] 1-9. Hernandez has thus forfeited any arguments in opposition to this portion of the motion to compel. *See Caracci v. Am. Honda Motor Co.*, No. 19-cv-2796, 2021 WL 4459468, at *4 n.2 (N.D. Ill. Sept. 29, 2021) ("It is well-established that failure to respond to an argument results in waiver.") (internal quotation marks and ellipsis omitted); *Hobbs v. Am. Com. Barge Line LLC*, No.4:22-cv-63-TWP-KMB, 2023 WL 6276068, at *3 (S.D. Ind. Sept. 26, 2023) ("A party may be found to have waived any argument that it failed to adequately address when responding to a motion to compel.").

All the foregoing establishes that Hernandez has long been on notice of defendants' objection to the privilege log and, despite having multiple opportunities to correct the deficiency, has failed to do so. And the Court cannot see a good reason to give Hernandez another opportunity to correct that deficiency now. Accordingly, the Court finds that Hernandez is at fault vis-à-vis the deficient privilege log and that sanctions, in the form of requiring him to produce unredacted versions of log entries 7-18 and 20-23, are warranted.[4]

### 2. Hernandez Waived Work-Product Protection over Entry 19

The Court also concludes that Hernandez has failed to substantiate his work-product claim over entry 19, a document that is described as "corr with [a] John Marshall professor" named "Halpin." [237-4] 2. The log contains no information that would permit the Court to find that the letter is protected work product. The Court accordingly finds, for the same reasons given above, that the log is deficient,

---

[4] Given the Court's conclusion that none of the entries on the privilege log are protected by the attorney-client privilege, it is not strictly necessary to address defendant's remaining arguments for finding that Hernandez waived the privilege as to these log entries. For the sake of completeness, the Court elects to address these issues.

6

Hernandez is at fault, and that Hernandez must produce an unredacted version of this document.

### 3. Hernandez Properly Withheld Entries 1-6

Entries 1-3 are described as "[a]ttorney notes as to 5th Amendment analysis and as to attorney investigation," "[a]ttorney notes analyzing police reports & discovery," and "draft of direct examination." [237-4] 2. The Court sustains Hernandez's claim that these materials constitute work product.

The work-product doctrine "protect[s] an attorney's thought processes and mental impressions against disclosure" and "limit[s] the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts[.]" *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). The doctrine protects both "fact" and "opinion" work product. *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024 (7th Cir. 2012). Fact work product is discoverable in the "rare case" where a party demonstrates a substantial need for the evidence, whereas opinion work product cannot be discovered even if there is a substantial need for it. *Walker v. White*, Case No. 16-cv-7024, 2019 WL 1953124, at *2 (N.D. Ill. May 2, 2019).

Solock's "attorney notes" are clearly opinion work product, as they are highly likely to contain Solock's mental impressions respecting the research he conducted on a specific legal issue, certain evidence that he reviewed, and how he prepared to question a witness. Accordingly, these documents are protected and could not be disclosed even if defendants had demonstrated a substantial need for this material and that they could not obtain equivalent information without undue hardship. *See Chartraw v. City of Shawano*, No. 16-C-807, 2017 WL 5462187, at *4 (E.D. Wis. Nov. 14, 2017) ("Opinion work product is protected even when the movant establishes the existence of undue hardship, and therefore is for all intents and purposes absolute.") (internal quotation marks omitted); *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981) (opinion work product "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship").

As for entries 4-6, the Court concludes that these documents also constitute opinion work product. These entries, which are dated March, May, and September 1999, are described as "[a]ttorney notes of client interview" and thus constituted notes that Solock made while or after interviewing Hernandez before his criminal trial began. [237-4] 2. It is well-established that "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Hickman v. Taylor*, 329 U.S. 495, 513 (1947). Indeed, an attorney's notes "summarizing what a witness said" during an interview "reveal[ ] an attorney's mental processes at least to some degree and deserves *the greater protection for opinion work product.*" *Walker*, 2019 WL 1953124,

7

at *3 (emphasis in original); *see also Cooper v. Rezutko*, Case No. 3:17-CV-834-PPS-MGG, 2022 WL 406387, at *6 (N.D. Ind. Feb. 10, 2022) (work-product doctrine applied to lawyer's anticipated deposition testimony about what witness told lawyer during interview because lawyer's testimony "would necessarily disclose his own oral summary, comparable to a written note or memorandum, of his investigative efforts" on client's behalf). Accordingly, and notwithstanding Hernandez's failure to invoke work-product protection, the Court concludes, in the exercise of its broad discretion to resolve the parties' discovery dispute, that entries 4-6 are protected opinion work product that cannot be disclosed to the defense. *See Chartraw*, 2017 WL 5462187, at *4; *Upjohn*, 449 U.S. at 401-02.

### B. Inadvertent or Involuntary Disclosures of Entries 9-11 and 18

Defendants also argue that Hernandez waived privilege and work-product protection over five documents (separate and apart from Hernandez's three letters to Swaminathan) that were produced in this litigation by the Exoneration Project. [237] 8-9. Blagg also possesses these documents, but she asserted privilege and did not produce them. [237-4] 2. The specific documents at issue are entries 9-11 and 18 on the privilege log, all of which are described as correspondence between Solock and Hernandez. *See* [*id.*]. Citing the fact that the Exoneration Project and Blagg–neither of whom ever represented Hernandez–possessed these allegedly privileged documents, defendants contend that Hernandez must have made a knowing disclosure of the correspondence to these third parties, resulting in waiver. [*Id.*] 13-14. Defendants also invoke Federal Rule of Evidence 502, contending that Hernandez failed to take prompt and reasonable steps to claw back the documents after they were produced by the Exoneration Project and subsequently reproduced, in September 2024, to Hernandez's counsel. [*Id.*] 14-16. In an apparent response to defendants' first point, Hernandez contends that no waiver occurred because the common-interest privilege "authorizes lawyers sharing of a client's communications with co-plaintiffs, represented by different counsel, without waiver." [261] 4. Hernandez also argues that defendants' reliance on Rule 502 is inapplicable because the disclosure here was involuntary rather than inadvertent.

The Court concludes that Hernandez has waived attorney-client privilege and work-product protection as to these documents.

### 1. The Common Interest Doctrine Does Not Apply.

First, while Hernandez appears to contend that no waiver occurred by virtue of the disclosure of these four documents to the Exoneration Project and Blagg, Hernandez has not substantiated his claim that these disclosures occurred pursuant to the common interest doctrine.

8

The common interest doctrine is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third party." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). It allows "communications that are already privileged to be shared between parties having a common legal interest without a resultant waiver." *Fleury v. Union Pac. R.R.*, No. 20 C 390, 2024 WL 1620613, at *4 (N.D. Ill. Apr. 15, 2024) (internal quotation marks omitted). However, a party "cannot simply make a blanket claim of common interest doctrine applicability . . . It must instead assert the common interest doctrine on a document-by-document basis[.]" *Id.*, at *7. Furthermore, the doctrine "is only applied to those communications made to further an ongoing enterprise." *Id.* (internal quotation marks omitted). The party invoking the doctrine has the burden to establish that it applies. *See id.*

Hernandez has not shown that the common interest doctrine protects the disclosure of his correspondence with Solock to Blagg and the Exoneration Project. Hernandez has done nothing more than make a "blanket claim" that documents disclosed to Blagg and the Exoneration Project are protected by the common interest doctrine. He has not defined the "common legal interest" he shared with Blagg, the Exoneration Project, or their clients that would have permitted such disclosures, nor has he shown how the documents at issue were "made to further an ongoing legal enterprise." *Fleury*, 2024 WL 1620613, at *4. There is simply no basis in the record before the Court to find that Hernandez's disclosures to Blagg and the Exoneration Project were protected by the common interest doctrine. Therefore, Hernandez waived privilege over these documents when he produced them to Blagg and the Exoneration Project.

### 2. Hernandez Failed to Take Prompt and Reasonable Steps to Cure Any Inadvertent or Involuntary Disclosure.

Second, and assuming that the disclosure of these documents to Blagg and the Exoneration Project did not waive the privilege, Hernandez's failure to take prompt and reasonable curative steps once he became aware that these documents had been included in the Exoneration Project's subpoena response did.

Hernandez contends that defendants' argument based on "inadvertent third party disclosure" is "deeply flawed" because "the Exoneration Project is incapable of waiving the privilege on Hernandez's behalf." [261] 4. He therefore argues that "the concept of inadvertent disclosure simply does not apply" and that the Court should treat this case as involving an "involuntary disclosure" of privileged material. [*Id.*] 4-5. The Court takes Hernandez's point to the extent that it agrees that this case does not present a typical inadvertent-disclosure scenario. Typically Rule 502 is invoked when a party to the case seeks to claw back a privileged document that it produced during the litigation. That the disclosure here may have been "involuntary" because it was made by a third-party does not materially change the Court's analysis,

9

however. That is because, even with an involuntary disclosure, "[w]hat happened after the involuntary disclosure is just as important as the initial disclosure itself. And it is those next steps that ultimately dooms [Hernandez's] argument." *Mabes v. McFeeley*, No. 1:21-cv-2062-JRS-MKK, 2023 WL 4269907, at *4 (S.D. Ind. June 29, 2023).

The Court sets aside the lengthy period between the latest date on which Hernandez's counsel received the Exoneration Project's production (September 25, 2024) and the date when Hernandez's counsel apparently learned that allegedly privileged material was included in that production (at Hernandez's deposition on May 6, 2025). *Cf. Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1041 (N.D. Ill. 2009) (recognizing that, for purposes of Rule 502, a "producing party" need not undertake "a post-production review" to ensure that document production does not contain privileged material). After learning of this disclosure, Hernandez simply was not diligent in seeking to cure the disclosure. Hernandez waited until May 21–more than two weeks after the deposition–to make a claw-back request. [237] 16; *see Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) (sending claw-back letter to opponent two weeks after discovering inadvertent disclosure was "lax at best"). Despite defendants' opposition to that request, Hernandez did not seek a protective order or insist that defendants destroy the documents at issue. *See* [237] 16. Indeed, there is no claw-back motion before the Court, as Hernandez has "relied entirely on [his] opponent" to bring this issue to the Court's attention. *Club Gene & Georgetti, LP v. XL Ins. Am., Inc.*, 2021 WL 1517929, at *2 (N.D. Ill. Apr. 16, 2021) (granting motion to compel production of inadvertently disclosed document where "defense counsel took the lead" in seeking resolution of issue and plaintiff's counsel's "cavalier attitude," evidenced by counsel's three-week delay before responding to defense inquiry and failure to demand "return or destruction of document," "belie[d] any claims that plaintiff was serious about not letting the disclosure go any further").

For these reasons, too, plaintiff has waived the attorney-client privilege and work-product protection over entries 9-11 and 18.

### C. *Brady* Claim and Implicit Waiver

Defendants argue that Hernandez waived the attorney-client privilege by bringing a *Brady* claim. [237] 19-21. Defendants contend that, because plaintiff cannot prevail on that claim if "Hernandez's counsel knew about the *Brady* evidence," they are entitled to discover whether Hernandez ever discussed the allegedly suppressed evidence with Solock. [*Id.*] 20 (internal emphasis omitted). In response, Hernandez contends that this argument "collapses of its own weight" because defendants cannot show that Solock "knows of any additional facts relevant to [his] *Brady* claim." [261] 7.

10

The attorney-client privilege "can be waived . . . when the client's claim or defense puts the attorney's advice at issue." *Taylor v. City of Chicago*, No. 14 C 737, 2015 WL 5611192, at *2 (N.D. Ill. Sept. 22, 2015). "[A]dvancing a *Brady* claim does not *per force* constitute a waiver of the attorney-client privilege," but a waiver can occur "if the plaintiff places the extent of his and his counsels' knowledge of information withheld during the initial criminal trial at issue." *Id.* (internal quotation marks omitted). This is because "[t]here is no *Brady* violation if the defendant [*i.e.*, the plaintiff in a civil-rights suit] knew or should have known about the essential facts in the allegedly exculpatory evidence." *Id.* (internal quotation marks omitted).

Hernandez alleges that defendants "deliberately withheld exculpatory evidence" from him and his lawyer, including evidence that defendants had "manufactured false identifications of Plaintiff" as the person responsible for murdering Soto. [83] at ¶ 147. In response to an interrogatory asking Hernandez to flesh out his *Brady* claim, Hernandez stated that defendants "suppressed evidence that would have shown Plaintiff was innocent, as well as evidence that could have been used to undermine the testimony of the State's witnesses, including but not limited to evidence of Defendant Guevara's prior misconduct." [237-4] 17. Hernandez also claimed that Guevara "suppressed the existence of a security camera tape from Bristol's Nightclub . . . which showed that Plaintiff never entered Bristol's Nightclub" and a "street interview with Sherman Pogue wherein Pogue identified the armed robbers of February 16, 1999 as being individuals other than Plaintiff[.]" [*Id.*] 18. Finally, in his response brief Hernandez identifies the following conduct as additional *Brady* violations: (1) defendants coerced Gecht and Kwil to falsely implicate Hernandez in the murder; (2) defendants fabricated "an anonymous tip naming Mr. Hernandez [and another individual] as having been bragging in a bar that they killed Cruz"; and (3) defendants planted a gun in Theresa Lozado's apartment. [261] 7-8.

The Court concludes that Hernandez has impliedly waived the attorney-client privilege with respect to any discussions he had with Solock regarding (1) Gecht's and Kwil's statements implicating Hernandez that were allegedly coerced by defendants, (2) Guevara's alleged misconduct in other cases, (3) the security tape, (4) the statement by Pogue, (5) the anonymous tip, and (6) the alleged planting of a gun in Lozado's apartment. For Hernandez's allegations about this allegedly suppressed evidence to support a *Brady* claim, Hernandez and Solock "cannot have known or reasonably discovered this exculpatory evidence." *Taylor*, 2015 WL 5611192, at *3. To defend against the *Brady* claim, defendants are therefore entitled to explore whether Hernandez and Solock discussed the existence of this evidence or their knowledge of it. Therefore, Hernandez must produce any correspondence identified on the privilege log (*i.e.*, entries 7-23) that reflects a discussion of the above-listed topics.

Hernandez's arguments to the contrary are unpersuasive. He first contends that bringing a *Brady* claim does not entitle defendants to inquire "into the substance

11

of any communications that [he] had with [Solock]," but only into whether "either of them knew of the existence of those facts." [261] 8. The Court disagrees. Obviously, and regardless of the implied waiver analysis, defendants were entitled to ask Hernandez and Solock if they knew about the allegedly suppressed evidence. Such facts, standing alone, are not protected by the attorney-client privilege. *See Specht v. Google, Inc.*, 268 F.R.D. 596, 601 (N.D. Ill. 2010) ("The privilege protects communications, not facts."). However, the *Brady* claim puts at issue a wider category of evidence that defendants are targeting in the motion: whether Solock and Hernandez ever discussed in their correspondence any of the allegedly suppressed evidence. *Cf. Taylor*, 2015 WL 5611192, at *3 ("The Court agrees with Defendants that Taylor and Diamond–Falk should be required to answer questions about any conversations they had concerning the alleged coercion that led Taylor to confess to murder while in police custody."). Hernandez also contends that Solock has already testified that he had "no independent recollection" of some or all of the allegedly suppressed evidence. [261] 8. This is no answer to whether Solock and Hernandez discussed that evidence in their correspondence, some of which is more than 20 years old.

### D. Solock's Deposition and Subject-Matter Waiver

Finally, defendants argue that the attorney-client privilege was waived when Solock testified to the substance of discussions he had with Hernandez about Hernandez's (1) denials of guilt, (2) his confession, (3) his alibi, (4) his treatment by police while in custody, and (5) his claim that his statement to police was fabricated. [237] 18-19.

"Generally, a party that voluntarily discloses part of a conversation covered by the attorney-client privilege waives the privilege as to the portion disclosed and to all other communications relating to the same subject matter." *Appleton Papers*, 702 F.3d at 1024. "The Court determines the scope of a waiver based on fairness and consideration of the risk that a limited disclosure of privileged communications, if permitted, might result in a party's use of privileged communications supporting its position and simultaneous concealment of communications that do not." *Meds. Co. v. Mylan Inc.*, 936 F. Supp. 2d 894, 903 (N.D. Ill. 2013).

As for Hernandez's denial of guilt, the Court rejects defendants' argument that a subject-matter waiver occurred. Solock merely testified that he told Hernandez's current lawyers that Hernandez had "consistently denied his guilt on the underlying case." [237-2] 21, at 13:14-20. This testimony is too vague to permit the Court to find that it disclosed privileged communications between Hernandez and Solock. After all, Hernandez pleaded not guilty to the murder charge and thus Solock may have based this testimony on Hernandez's public denials of guilt. The Court also rejects defendants' claim that a waiver occurred as to the subject of Hernandez's confession. Solock did not disclose what, if anything, Hernandez told him about the statement he

12

made while in police custody. Rather, Solock testified that he had interviewed Hernandez and that, during that interview or interviews, the subject of Hernandez's custodial statement was discussed. *See* [237-2] 24-25, at 51:6-54:5. Likewise, there was no waiver as to the subject of Hernandez's alibi. Solock testified that he and Hernandez had discussed the alibi but that he had no independent recollection of who Hernandez's alibi witness was. *See* [237-2] 28, at 79:17-81:23.[5] Similarly, the Court finds no waiver as to what Hernandez told Solock about how police treated him while in custody. Solock did not disclose what Hernandez had told him about that treatment. *See* [237-2] 33-34, at 94:4-101:19). Instead, Solock testified that, had Hernandez told him certain things about his treatment by police, he would have included that information in a pretrial motion to suppress that he filed on Hernandez's behalf. While the issue is not free from doubt, in the sense that Solock's testimony implies that Hernandez did not tell him that police had abused him, the Court disagrees that Solock's responses to defense counsel's hypothetical questions constitute a voluntary disclosure of what Hernandez in fact told him about his treatment by police. Finally, there was no subject-matter waiver as to Hernandez and Solock's conversations about whether police had fabricated Hernandez's custodial testimony. *See* [237-2] 35-36, at 101:21-102:18. Solock testified that he did not independently recall whether Hernandez had told him that the police and prosecutors had fabricated his statement.

Defendants also contend that a waiver occurred because Solock "refreshed his recollection about [the five topics above] at his deposition with the very records that are being withheld." [237] 18. Defendants point the Court to a single exchange, early in the deposition, where Solock testified that he reviewed "some of my attorney/client notes and work product notes from the file." [237-2] 19, at 9:7-11. This is insufficient to cause a subject-matter waiver. For a waiver to have occurred, defendants would need to show that Solock's review of these notes "refreshed his recollection or influenced any aspect of his deposition testimony." *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 729 (7th Cir. 2025). Defendants

---

[5] While questioning Solock about Hernandez's alibi, defense counsel directed Solock's attention to an exhibit that defense counsel characterized as a "handwritten pleading by Mr. Hernandez describing his alibi" and as Hernandez's "habeas petition." [237-1] 28, at 80:1-20. Counsel then read into the record an excerpt from this document in which Hernandez described his alibi. When counsel resumed his questioning of Solock, Solock testified that Hernandez had told him "something similar to what was in that petition." [*Id.*], at 81:8-14. The Court notes, however, that the document at issue was not Hernandez's habeas petition, but one of the letters that Hernandez sent to Swaminathan (and over which Hernandez asserted privilege). *Compare* [*id.*], at 80:1-4 (noting document was in response to Blagg subpoena and labeled 8154-8159), *with* [238-2] 174-79 (exhibit to Hernandez's October 3, 2019 letter). The Court concludes that Solock's testimony on this score was very likely influenced by defense counsel's mistaken characterization of the exhibit as a publicly available court pleading, and that Solock's vague suggestion that Hernandez had told him "something similar" did not waive the attorney-client privilege as to their discussions of the alibi defense.

13

have not attempted to make that showing, nor can the Court see how they could do so, given Solock's testimony that (notwithstanding his review of these notes) he had no independent recollection of several matters into which the defense inquired. Because the Court cannot conclude that Solock's "answers to 'specific areas of questioning were informed by documents he reviewed'" before the deposition, the Court rejects this waiver argument. *Id.* (quoting *Sporck v. Peil*, 759 F.2d 312, 318-19 (3d Cir. 1985)).

## Conclusion

Defendants' joint motion to compel [237, 238] is granted in part and denied in part. The motion is granted to the extent that, within seven days of the date of this order, Hernandez shall (1) produce complete and unredacted copies of the three letters to attorney Swaminathan (to the extent that these letters, in their entirety, have not already been produced to defendants); (2) serve a revised answer to Guevara's Interrogatory 19 that complies with this Order; and (c) produce complete and unredacted copies of entries 7-23 on the July 11 Amended Privilege Log. The motion is denied to the extent that the Court finds that entries 1-6 on the Amended Privilege Log constitute opinion work product that need not be produced.

	*/s/ Heather K. McShain*
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 28, 2025**